A–65/66/67
JEAN GORTON; MARI FERRY; AND BERNARD LEVEN-
BERG, AS ADMINISTRATOR *AD PROSEQUENDUM* OF
THE ESTATE OF JUDY LEVENBERG, DECEASED,
PLAINTIFFS-RESPONDENTS, v. RELIANCE INSUR-
ANCE COMPANY, UTICA MUTUAL INSURANCE COM-
PANY, AND GOVERNMENT EMPLOYEES INSURANCE
COMPANY, DEFENDANTS-APPELLANTS.

A–69
EMPIRE MUTUAL INSURANCE COMPANY, PLAINTIFF-AP-
PELLANT, v. PHILIP J. DEMPSEY, DEFENDANT-RE-
SPONDENT, AND JOHN P. GILMORE, DEFENDANT.

Argued January 19, 1977—Decided September 18, 1978.

564

*Mr. Anthony C. Stuart* argued the cause for defendant-appellant Government Employees Insurance Company (*Messrs. Hansen, Pantages, Sellar & Zavesky,* attorneys; *Mr. Louis J. Pantages* and *Mr. Stuart,* of counsel and on the brief).

*Mr. Thomas B. Mannion* argued the cause for defendant-appellant Reliance Insurance Company (*Messrs. Lynch, Mannion, Lutz & Lewandowski,* attorneys; *Mr. Mannion,* on the brief).

*Mr. William E. Grant* argued the cause for plaintiff-appellant Empire Mutual Insurance Company (*Mr. Edward A. Harmon,* attorney; *Mr. Norman Zeiner,* on the brief).

Mr. *Leonard Finkelstein* argued the cause for plaintiffs-respondents Gorton, Ferry and Levenberg (*Messrs. Heilbrunn, Finkelstein, Heilbrunn, Garruto & Galex,* attorneys; *Mr. Martin W. Yazgier,* on the brief).

Mr. *David P. Loughran* argued the cause for defendant-respondent Philip J. Dempsey (*Messrs. Sutton, Ward, Sutton, Hein & O'Malley,* attorneys; *Mr. Lowell A. Berg,* on the brief).

PER CURIAM. These two cases, argued here together but not formally consolidated, pose a common question of availability of uninsured motorist (UM) coverage. They arise out of a two-vehicular collision of July 16, 1971 in Holmdel, New Jersey. Plaintiffs Gorton and Ferry and plaintiff Levenberg's decedent, Judy Levenberg (along with another, unidentified person not here involved), were passengers in an automobile owned and operated by one Richard Chamos. Dempsey, defendant in the companion case, was operating a vehicle owned by defendant Gilmore when it was struck by the Chamos car. As a result of the accident Gorton, Ferry and Dempsey all sustained personal injuries, and Judy Levenberg, Chamos, and the fourth passenger in the 'Chamos vehicle were killed.

In the ensuing action for personal injuries and wrongful death the parties agreed that Chamos alone was at fault and responsible for the collision. His liability insurance carrier, which provided bodily injury liability coverage in the then statutory minimum amounts of $10,000 for each person and $20,000 per accident,[1] offered its policy limits in settlement of all claims against Chamos, who was otherwise judgment-proof. Of the total of $20,000 available, Gorton settled for $4285.71, Ferry for $2042.85, Levenberg for $2673.44, Demp-

---

[1]The required minimum bodily injury liability limits are now $15,000 per person and $30,000 per accident. *N. J. S. A.* 39:6B-1; *N. J. S. A.* 39:6A-3.

sey for $1000, and the balance went to the fifth claimant. It is alleged, and we assume for purposes of this litigation, that these amounts would not adequately compensate the various claimants before us for their injuries and damages.

Prior to executing releases reflecting this settlement plaintiffs Gorton, Ferry and Levenberg made a demand for arbitration, seeking recovery under the UM endorsements of their own insurance policies covering them at the time of the accident.[2] Gorton claimed UM coverage under a Government Employees policy, Ferry under a Utica Mutual policy, and Levenberg under a Reliance policy. After instituting arbitration proceedings (and presumably because the carriers resisted arbitration, although the record does not set this forth specifically) these plaintiffs filed a declaratory judgment suit against their insurance companies, alleging that the liability insurance on the Chamos vehicle was "so inadequate as to render [that] vehicle uninsured within the meaning of their respective policies" and seeking a judgment to that effect. They asked as well that the judgment declared each of them entitled to the difference between what they would receive under the terms of the settlement with Chamos' liability insurer and the amounts available under their respective UM endorsements ($10,000 in each instance). The carriers filed answers denying that the Chamos vehicle was uninsured, either within the meaning of the policies or of the financial responsibility law.

Thereafter the parties brought cross-motions for summary judgment. The trial court granted the carriers' motions,

[2]No issue is raised in this case concerning the availability of any UM endorsement that might have been included in the Chamos policy. The questions of whether an injured claimant would have access to both the liability coverage and any UM endorsement on the host vehicle and, if so, which UM endorsement (his own or the host vehicle's) would be primary in that situation have not been presented, nor do they appear in the companion *Empire Mutual* case. These issues are before us in a case presently awaiting oral argument, *Ciecka v. Home Indemnity Insurance Co.*, certif. granted, 77 *N. J.* 490 (1978).

holding that the Chamos vehicle was not uninsured, either within the specific language of the respective policies under which UM protection was sought or within the meaning of *N. J. S. A.* 39:6–46, governing the requirements for liability policies under the Motor Vehicle Security-Responsibility Law. The Appellate Division reversed, *Gorton v. Reliance Insurance Co.*, 137 *N. J. Super.* 558 (1975), holding that

since the minimum statutory limit for bodily injury or death of $10,000 per person was not available to each plaintiff [from the Chamos liability policy], the Chamos automobile was actually uninsured as to the difference between the amount of insurance coverage available and the minimum statutory limit of $10,000. Each plaintiff is entitled to recover under his UM endorsement the full amount of his damages up to a total of $10,000, less the amount already received by way of settlement with Chamos' insurance company.

[137 *N. J. Super.* at 566.]

On defendants' petition we certified the cause to review this holding. 70 *N. J.* 273 (1976).

In the companion case defendant Dempsey, who, it will be recalled, settled his personal injury claim against Chamos for $1000, sought to recover under the UM provisions of the insurance policy issued by Empire Mutual Insurance Company covering the Gilmore vehicle which he, Dempsey, was driving at the time of the accident. Dempsey filed a petition in arbitration against Empire Mutual, and the carrier responded by bringing this declaratory judgment action to enjoin arbitration. The trial court found for defendant, concluding that the Chamos vehicle was uninsured for the difference between Dempsey's settlement with Chamos in the amount of $1,000 and the limit of UM coverage, $10,000.[3]

---

[3] In addition to the question of whether the Chamos vehicle was uninsured for purposes of the availability to claimant Dempsey of UM coverage, the Empire Mutual case poses the additional question of whether Dempsey waived his right to arbitration of his claim under the UM endorsement by settling with Chamos without the written consent of Empire Mutual, the UM carrier. The trial court ruled there had been no waiver. In view of our disposition of the

While Empire Mutual's appeal from this determination was pending in the Appellate Division, we certified the cause on the Court's own motion. 70 *N. J.* 527 (1976).

We look first to the UM endorsements in the policies before us[4] to determine whether UM coverage is afforded to these claimants under the language of those endorsements. The significant provisions are as follows:

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

No judgment against any person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

 ✻ ✻ ✻ ✻ ✻ ✻ ✻ ✻

"uninsured highway vehicle" means:

(a) *a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured highway vehicle is principally garaged* [*here, New Jersey*], *no bodily injury and property damage liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle,* or with respect to which there is a bodily injury and property damage liability bond or insurance policy applicable at the time of the accident but the company writing

---

case we neither reach this issue nor imply any view of the trial court's ruling.

[4]The clauses and definitions referred to are substantially the same in all four UM endorsements before us, the variations between them being only minor and not pertinent to our consideration of those endorsements.

the same denies coverage thereunder or is or becomes insolvent
* * *.

[Emphasis added.]

Our examination of the foregoing need be little more than cursory, for it is readily apparent that the Chamos automobile was not an "uninsured highway vehicle" within the meaning of the UM endorsement, inasmuch as at the time of the accident it was covered for bodily injury and property damage liability by an insurance policy "in at least the amounts specified by the financial responsibility law" of the State of New Jersey. Indeed, all the claimants concede that the Chamos vehicle does not qualify as "uninsured" under the terms of this policy provision, and that on the face of the UM endorsements coverage is not available to them.

The thrust of the injured claimants' argument, then, is not that the language of the UM endorsement provides coverage in the situation at hand, but rather that as a result of the endorsement's definition of "uninsured highway vehicle" the endorsement itself fails to provide the coverage mandated by law, N. J. S. A. 17:28–1.1. That statutory provision at the time of the accident in this case, L. 1968, c. 385, § 2, provided:

No automobile liability policy * * * of insurance * * * shall be delivered or issued for delivery in this State * * * unless coverage is offered in connection therewith, in limits for bodily injury or death set forth in section 9 of chapter 174 of the laws of 1952 (C. 39:6–69), * * * for payment of all or part of the sums which the insured or his legal representative shall be legally entitled to recover as damages from the operator or owner of an uninsured automobile, or hit and run automobile as defined in section 18 of said chapter 174 (C. 39:6–78) * * *.

In view of the fact that the foregoing statute does not define "uninsured automobile," claimants contend that the term as used in this enactment "should be interpreted in accordance with the legislative intent of allowing the broadest indemnification of injured motorists and the socially desir-

able policy of adequate indemnification of innocent automobile victims." In support of this proposition they rely upon our decision in *Motor Club of America Insurance Co. v. Phillips*, 66 *N. J.* 277 (1974), as well as *Porter v. Empire Fire & Marine Insurance Co.*, 106 *Ariz.* 274, 475 *P.* 2d 258, mod. on other grounds, 106 *Ariz.* 345, 476 *P.* 2d 155 (1970). The insurers, on the other hand, urge that "uninsured automobile" as used in *N. J. S. A.* 17:28-1.1, which, as noted, is section 2 of Chapter 385, must mean the same as "uninsured motor vehicle" as defined in *N. J. S. A.* 39:6-62, which is section 4 of the same Chapter.

 Claimants' contention has to be evaluated with an eye to the legislative scheme underlying *L.* 1968, *c.* 385. The stated purpose of the enactment was "to provide greater protection for the victims of uninsured motorists," which it undertook to do by mandating the offer of UM coverage and at the same time making recourse to the Unsatisfied Claim and Judgment Fund unavailable to any insured under an automobile policy furnishing UM coverage, thereby giving much-needed relief to the Fund. See *Motor Club of America Insurance Company v. Phillips, supra,* 66 *N. J.* at 283-85. See generally Stanton, Protection Against Uninsured Motorists in New Jersey, 3 *Seton Hall L. Rev.* 19, 21-22 (1971). Examination of Chapter 385 reveals that while two of its three basic sections were placed in Title 17 of the New Jersey statutes (*N. J. S. A.* 17:28-1.1 and 1.2), the third, which effected a definitional amendment of "qualified person" in the Unsatisfied Claim and Judgment Fund law, became part of Title 39 (*N. J. S. A.* 39:6-62). Hence *N. J. S. A.* 17:28-1.1 must be read in *pari materia* with *N. J. S. A.* 39:6-62 to determine the meaning of "uninsured automobile" as that term appears in *N. J. S. A.* 17:28-1.1.

 When the legislature enacted Chapter 385, the separate definition of "uninsured motor vehicle" in the Unsatisfied Claim and Judgment Fund Law, — that is, a motor vehicle not insured for the then minimal limits of $10,000 per person, $20,000 per accident for bodily injury,

and $5000 property damage — remained unchanged. The paragraph immediately preceding the one in which "uninsured motor vehicle" is defined contains the amended definition of who is a "qualified person" for purposes of recovery from the Fund, and uses the term "uninsured motor vehicle." Since one of the purposes of the UM provision was to reduce the drain on the Unsatisfied Claim and Judgment Fund, see *Public Hearing,* March 4, 1967, before the Joint Senate and Assembly Committees on Banking and Insurance, on Assembly Bill No. 111 and Senate Bill No. 481 at 10, 47, 51, the term "uninsured automobile" in *N. J. S. A.* 17:28–1.1, *L.* 1968, *c.* 385, § 2, mandating the offering of UM coverage, must be read to mean the same thing as "uninsured motor vehicle" in the Unsatisfied Claim and Judgment Fund Law. And by that definition the Chamos automobile was not uninsured, inasmuch as it had liability insurance in the minimum required limits.

 We believe this analysis accurately reflects the legis¹ative intent. At the same time we acknowledge the oft-cited anomaly that those in the position of these claimants would find themselves in a better position were the tortfeasor's vehicle totally uninsured rather than underinsured. However, the objective of the legislature as we perceive it was to protect the public from a noninsured, financially irresponsible motorist, not one who is insufficiently insured. See *Lund v. Mission Insurance Co.,* 270 *Or.* 461, 528 *P.* 2d 78 (1974). The protection intended is against an *"uni*nsured" motorist, not one who is *"under*insured." The legislature required that a minimum level of coverage be available for each accident when more than one person was injured. It did not undertake to guarantee an irreducible minimum sum available to every injured person under every set of circumstances but simply to make available a *policy* offering minimum levels of coverage.

Nothing in *Phillips, supra,* counsels against this reading of Chapter 385 as applied to this case. There we invalidated the "excess escape" clause in the "other insurance" para-

graph of the standard UM endorsement as being repugnant to Chapter 385 and invalid on the facts there presented. While we reiterated our adherence to the principle of liberality in effecting the broadest protection of auto accident victims, we noted that that salutary principle operates — as of course it must — within the constraints imposed by the language of the pertinent statute. 66 *N. J.* at 293. On the issue before us the legislative intent appears clear to the effect that an uninsured automobile is one which does not meet the requirements of the Financial Responsibility Law, and not simply an underinsured vehicle.

*Porter v. Empire Fire and Marine Insurance Co., supra,* relied upon by the Appellate Division in the *Gorton* case and by the Chancery Division in the *Dempsey* suit, is indistinguishable on its operative facts and leads to an opposite result. While that case has adherents in other jurisdictions, see *Hanlon v. Buckeye Union Insurance Co.,* 73 *Ohio Op.* 2d 267, 324 *N. E.* 2d 598 (Com. Pl. 1975); *Palisbo v. Hawaiian Insurance & Guaranty Co.,* 57 *Haw.* 10, 547 *P.* 2d 1350 (1976), we join those states which have been persuaded to a contrary view, see *Kemp v. Fidelity & Casualty Co. of New York,* 512 *S. W.* 2d 688 (Tex. 1974); *Travelers Insurance Co. v. Bouzer,* 39 *Cal. App.* 3d 992, 114 *Cal. Rptr.* 651 (Ct. App. 1974).

In *Porter* the plaintiff was one of five persons injured in an automobile accident caused solely by the negligence of one Fitch, who was insured for the minimum amounts required by Arizona's financial responsibility laws. Fitch's liability insurer made its full policy limits available to the five injured persons and Porter settled his claim, which was deemed to be worth $10,000, for $2500. Before accepting the settlement Porter made claim against his UM insurer for $7500, the difference between the value of his personal injury claim and what he was to receive in settlement thereof. On Empire's denial of the claim Porter instituted suit against that company, which in turn moved to dismiss. The trial court granted the motion.

In reversing, the Supreme Court of Arizona drew an analogy between Porter's situation and other cases in which although the tortfeasors had some form of insurance, the insurers denied coverage or became insolvent or had issued policies which failed to conform to the state's financial responsibility laws. These authorities, according to the court, led to the conclusion that a "partially insured" motorist could very well be "uninsured" and that an outcome which diminished the protection afforded by UM coverage was to be avoided. The court said:

Although on paper $10,000 was available to Porter, if he received in actuality only $1 he would find that the protection upon which he relied, and for which he paid premiums, disintegrates in the face of a flimsy, unrealistic excuse. * * * [T]he insured would be in a much better position had the tort-feasor been totally uninsured. Were this so, Porter would have been able to recover the full amount of his damages under his own uninsured motorist coverage rather than the fraction which he received from Fitch's [the tortfeasor] insurance.

[475 *P*. 2d at 263.]

A statutory mandate for the recovery of at least $10,000 was found by extension of the argument that insurance was unavailable to Porter.

We decline to adopt the reasoning of the *Porter* court. In doing so we note the view, sharply divergent from our own, that the Arizona courts have taken with respect to the relationship between the UM statute and financial responsibility laws. *Compare Transportation Insurance Co. v. Wade,* 106 *Ariz.* 269, 475 *P.* 2d 253, 257 (1970) ("excess escape" clause in the standard "other insurance" paragraph enforceable) *with Motor Club of America Insurance Co. v. Phillips, supra,* 66 *N. J.* at 294 ("excess escape" clause invalid). More significant than that difference in approach to the two states' schemes of insurance, however, is our discomfort with the practical effect of the *Porter* decision. That case effectively transforms UM coverage into a policy

of excess accident insurance and, as a California court has noted,

not excess insurance with any fixed limits, but insurance "open ended" at least to the limits of the uninsured motorist coverage. That is not the coverage for which the insured paid a premium, nor would it conform to any rational public policy. We hesitate to contemplate what premiums insured motorists would have to pay for uninsured motorist coverage should this court declare that to be the proper interpretation of legislative intent.

> [*Travelers Insurance Co. v. Bouzer, supra,* 39 *Cal. App.* 3d at 995, 114 *Cal. Rptr.* at 652–53.]

The judgment of the Appellate Division in the *Gorton* case is reversed and the judgment of the trial court in favor of defendants is reinstated. No costs.

The judgment of the Chancery Division in the *Dempsey* case is reversed and the cause remanded to the trial court for entry there of judgment in favor of plaintiff. No costs.

*For reversal and reinstatement in Gorton and reversal and remandment in Dempsey*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—6.

*For affirmance*—None.