228 N.J. Super. 428 (1988)
549 A.2d 1275
LEONARD WOLFE AS ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF DEBRA WOLFE, PLAINTIFFS,
v.
SPERLING AGENCY, INC., AND THE HANOVER INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided August 12, 1988.
*429 Pamela Giannotto for Plaintiffs (Gallo, Geffner, Fenster, Farrell, Turitz & Harraka, Attorneys).
Anthony C. Stuart, for Defendant Hanover Insurance Company (Sellar, Richardson, Stuart & Chisholm, P.C., Attorneys).
YANOFF, J.S.C. (retired and temporarily assigned on recall).
At issue is the meaning of an "underinsured motor vehicle," in N.J.S.A. 17:28-1.1 e.
The context is not in dispute. On January 13, 1985, plaintiff's daughter, Debra Wolfe, was killed in an automobile accident. She was a passenger in a car driven by Gregory Reyes, whose negligence caused the accident. Of the two other passengers in the car, one was killed and one was severely injured. *430 Reyes carried a bodily injury/property damage liability of $25,000 per person and $50,000 per accident. Each of the three passengers in the automobile received approximately $16,600 of the $50,000.
When the accident occurred, the decedent, Debra Wolfe, was covered by her father's underinsured motorist policy, with limits of $25,000 per person and $50,000 per accident, identical to Reyes's liability coverage. Plaintiff seeks to recover the difference between the amount collected under Reyes's policy, $16,600, and his underinsured motorist coverage of $25,000. The defendant Hanover Insurance Company denies coverage. Both parties move for summary judgment.
The statute involved is part of a comprehensive act to revise and reform the law of automobile insurance. N.J.S.A. 17:28-1.1 e reads:
For the purpose of this section, (1) `underinsured motorist coverage' means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance or use of an underinsured motor vehicle. Underinsured motorist coverage shall not apply to an uninsured motor vehicle. A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds;
(2) `uninsured motor vehicle' means: (a) a motor vehicle with respect to the ownership, operation, maintenance, or use of which there is no bodily injury liability insurance or bond applicable at the time of the accident;
(b) a motor vehicle with respect to the ownership, operation, maintenance, or use of which there is bodily injury liability insurance in existence but the liability insurer denies coverage or is unable to make payment with respect to the legal liability of its insured because the insurer has become insolvent or bankrupt, or the Commissioner of Insurance has undertaken control of the insurer for the purpose of liquidation; or

*431 (c) a hit and run motor vehicle as described in section 18 of P.L. 1952, c. 174 (C.39:6-78).
`Uninsured motor vehicle' shall not include an underinsured motor vehicle; a motor vehicle owned by or furnished for the regular use of the named insured or any resident of the same household; a self-insurer within the meaning of any financial responsibility or similar law of the state in which the motor vehicle is registered or principally garaged; a motor vehicle which is owned by the United States or Canada, or a state, political subdivision or agency of those governments or any of the foregoing; a land motor vehicle or trailer operated on rails or crawler treads; a motor vehicle used as a residence or stationary structure and not as a vehicle; or equipment or vehicles designed for use principally off public roads, except while actually upon public roads.
Defendant maintains that the Reyes vehicle was not underinsured under N.J.S.A. 17:28-1.1 e because the limits of Reyes's policy were exactly the same as plaintiff's policy, $25,000 per person, $50,000 per accident. Thus, it is argued, plaintiff may not recover the difference between the $16,600 actually received and the $25,000 for which he is covered on his own underinsured motorist policy.
Plaintiff's position is that the word "available" in N.J.S.A. 17:28-1.1 e indicates a legislative intent to allow the claimant to recover when the limit of liability coverage is greater than the payment claimant actually receives. Thus, the vehicle should not be considered underinsured merely because Reyes's policy limit is the same as that of the plaintiff.
The section in controversy became law by L. 1983, c. 65, and operative January 1, 1984. It should be noted that there was another amendment to the statute by L. 1983, c. 362 which became effective October 4, 1983, prior to the section in question.
Three general categories of underinsured motorist statutes have been recognized, using the nomenclature in Stott, Underinsured Motorist Coverage: Working out the Bugs, 36 Fed'n Ins.Couns.Q. 121, 122 (A, B and C) (1986). Type A statutes provide that the underinsured motorist limits must exceed the sum of the tortfeasor's liability limit for underinsurance to apply. Type B statutes provide that the tortfeasor's liability limit must be less than the insured's damages for him to be *432 considered uninsured. Type C statute, least common, simply requires that the claimant's liability limits exceed that of the tortfeasor, e.g., N.Y.Ins.Law, sec. 167(2-a) (McKinney 1966). The New Jersey statute is Type A. Cf. for example, Tennessee's statute, also Type A.
`Uninsured motor vehicle' means a motor vehicle ... for which the sum of the limits of liability available to the insured under all valid and collectible insurance policies, bonds, and securities applicable to the bodily injury, death, or damage to property is less than the applicable limits of uninsured motorist coverage provided to the insured under the policy against which claim is made. [Stott, supra at 122, citing Tenn. Code Ann. § 56-7-1202 (1982)]
The Tennessee statute is a particularly good example because like New Jersey's it uses the word "available."
In construing the statute we are required to rely upon its language and the purpose of the Legislature in enacting it. Unfortunately, there are no controlling New Jersey cases. Wert v. Picciano, 189 N.J. Super. 178 (Law Div. 1982), which has a factual context similar to that at bar, was decided prior to enactment of the statute and dealt only with interpretation of the language of an insurance policy.
Gorton v. Reliance Ins. Co., 77 N.J. 563 (1978), does afford some guidance because it deals with an argument similar to one advanced by plaintiff. The question there considered was whether uninsured motorist coverage carried pursuant to the statute was available where the tortfeasor was underinsured. The tortfeasor's liability insurance was insufficient to satisfy the claims of the victims of the accident. The victims sought recourse to the uninsured motorist coverage provisions of their insurance policies. The Court held that they could not, and explicitly disavowed the logic of Porter v. Empire Fire & Marine Ins. Co., 106 Ariz. 274, 475 P.2d 258 (1970), mod. on other grounds, 106 Ariz. 345, 476 P.2d 155 (1970). Its reasoning is important because it refutes plaintiff's argument that the legislation was to provide complete coverage for tortfeasors. The Court noted that "... one of the purposes of UM provision was to reduce the drain on the Unsatisfied Claim and Judgment *433 Fund...." 77 N.J. at 572. It then continued directly addressing plaintiff's argument:
At the same time we acknowledge the oft-cited anomaly that those in the position of these claimants would find themselves a better position were the tortfeasor's vehicle totally uninsured rather than underinsured. However, the objective of the legislature as we perceive it was to protect the public from a noninsured, financially irresponsible motorist, not one who is insufficiently insured. See Lund v. Mission Insurance Co., 270 Or. 461, 528 P.2d 78 (1974). The protection intended is against an `uninsured' motorist, not one who is `underinsured.' The legislature required that a minimum level of coverage be available for each accident when more than one person was injured. It did not undertake to guarantee an irreducible minimum sum available to every injured person under every set of circumstances but simply to make available a policy offering minimum levels of coverage. [Id.]
The opinion continued, referring to Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277 (1974):
While we reiterated our adherence to the principle of liberality in effecting the broadest protection of auto accident victims, we noted that that salutary principle operates  as of course it must  within the constraints imposed by the language of the pertinent statute. 66 N.J. at 293. On the issue before us the legislative intent appears clear to the effect that an uninsured automobile is one which does not meet the requirements of the Financial Responsibility Law, and not simply an underinsured vehicle. [77 N.J. at 573]
Ciecka v. Transamerica Ins. Group, 81 N.J. 421 (1979), to some extent emphasizes the teaching of Gorton. There, the problem was whether the injured plaintiff could have recourse to uninsured motorist coverage of the tortfeasor as well as his normal liability coverage ("stacking"). It was held that the tortfeasor's insurance carriers had "... to make available their UM coverage without any offset for payments heretofore made under Transamerica's liability coverage." Id. at 428.[1]
Ciecka was before the Court when Gorton was decided. Gorton, 77 N.J. at 567, n. 2. The Court differentiated the case from the issues in Ciecka. It must be noted that the "socially desirable policy of adequate indemnification of innocent automobile victims,"[2] underlay the Court's ruling in Ciecka that *434 "stacking" was permissible, but that in Gorton this policy was overcome by the clarity of the statutory language. It is significant also that the Court in Gorton cited Phillips, 77 N.J. at 571, but considered it not applicable.
As indicated, plaintiff's argument that the basic legislative intent was to afford complete coverage to persons injured by motor vehicle accidents, and that to adopt defendant's position would lead to the unreasonable result that if the tortfeasor's policy limits were $1 less than the underinsured policy, there would be underinsured coverage, was rejected in Gorton. Of course, reciprocally, it was open to the injured party to buy one dollar's worth more of underinsured's policy.
In Rogers v. Tennessee Farmers Mut. Ins. Co., 620 S.W.2d 476 (Tenn.Sup.Ct. 1981) the majority rejected the same argument, despite a dissenting opinion which articulated a similar contention.
The importance of Gorton is underscored by the interaction between uninsured and underinsured cases.
Annotation, "Uninsured and underinsured motorist coverage: recoverability, under uninsured or underinsured motorist coverage, of deficiencies in compensation afforded injured party by tortfeasor's liability coverage," 24 A.L.R.4th 13 (1983), lists cases in which uninsured motorist coverage has been treated as underinsured motorist coverage. See id. at 17, 42, 50.
Longworth v. Van Houten, 223 N.J. Super. 174 (App.Div. 1988), the most recent word on the statute, does not help either side. The case held that subrogation and consent to settle clauses in underinsured motorist coverage contravened public policy as set forth in the statute and therefore fell out of the policy. The opinion states:
Paragraph (e) in pertinent part defines an underinsured vehicle as one which is covered by total liability insurance in an amount less than the victim's UIM coverage. Paragraph (e) further provides that the amount of the victim-insured's UIM coverage available to compensate him for the damages caused by the tort-feasor is his UIM coverage limit less the sum the insured has received from the tortfeasor under all the tortfeasor's liability insurance. This deduction *435 provision of the statute comports with pre-statutory judicial construction of voluntarily offered UIM coverage in this state. See Wert v. Picciano, 189 N.J. Super. 178 (Law Div. 1982). [Id. at 177-78, n. 3]
This language, while hardly decisive, supports the ruling herein.
The upshot, reverting to Gorton, is that while there is a public policy that the insurance policy should be construed so as to afford relief to persons injured in motor vehicle accidents, the ultimate question is, what does the statute mean? The statutory language means that where the policy limits of the tortfeasor are more, or the same as the underinsured motorist policy limits, the motorist is not an underinsured motorist.
For cases under statutes similar to that under consideration in accord with this ruling see Herrod v. National Indem. Co., 643 F. Supp. 956 (N.D.Miss. 1986), and Wilson v. Nationwide Mut. Ins. Co., 667 F. Supp. 349 (N.D.Miss. 1987) ("uninsured" vehicle defined in terms of policy limits, without regard to proceeds received by claimants).
Plaintiff's reliance upon Florida law fails. Florida has the same type of underinsured motorist provision as New Jersey. This statute was construed to require a credit against underinsured motorist coverage of the amount tendered under tortfeasor's liability coverage. Dewberry v. Auto-Owners Ins. Co., 363 So.2d 1077, 1081, n. 5 (Fla.Sup.Ct. 1978), rev'd on other grounds, 383 So.2d 1109 (Fla.Ct.App. 1980), involving uninsured coverage, but stating that underinsured coverage would be treated similarly, and Jones v. Travelers Indem. Co. of Rhode Island, 368 So.2d 1289 (Fla.Sup.Ct. 1979). In Hurley v. State Farm Mut. Auto Ins. Co., 438 So.2d 1002 (Fla.Ct.App. 1983), it was held that where the uninsured motorist coverage equalled the tortfeasor's liability coverage, there could be no recovery under the uninsured policy. The Court stated: "The appellant is neither an uninsured nor an underinsured motorist." Id. at 1003. In Holt v. State Auto Mut. Ins. Co., 385 So.2d 1058 (Fla.Ct.App. 1980), petition for review den., 394 So.2d 1152 (Fla. Sup.Ct. 1981), the same rule was applied where the tortfeasor's *436 policy was apportioned among multiple claimants. Florida law probably supports defendant's rather than plaintiff's position.
The defendant's motion for summary judgment is granted and the plaintiff's is denied.
Defendant will submit an appropriate order.
NOTES
[1] Subsection c of N.J.S.A. 17:28-1.1, the statute here considered, prohibits stacking. See Christy v. City of Newark, 102 N.J. 598 (1986).
[2] Citing Motor Club of America Ins. Co. v. Phillips, 66 N.J. at 292.