949 A.2d 295 (2008)
401 N.J. Super. 125
Omar SANDERS, Plaintiff-Respondent,
v.
Norma K. LANGEMEIER, Patricia L. Leslie, Clarendon National Insurance Company, Defendants, and
New Jersey Property-Liability Insurance Guaranty Association, Defendant-Appellant.
No. A-4335-06T3
Superior Court of New Jersey, Appellate Division.
Argued May 19, 2008.
Decided June 19, 2008.
*296 Hugh P. Francis, argued the cause for appellant (Francis & Berry, attorneys; Mr. Francis, of counsel and on the brief; Joanna Huc, on the briefs).
Kenneth E. Ryan, Passaic, argued the cause for respondent (Weiner, Ryan & Mazzei, attorneys; Mr. Ryan, on the brief).
Paul G. Witko, Deputy Attorney General, argued the cause for amicus curiae Commissioner of Banking and Insurance (Anne Milgram, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Mr. Witko, on the brief).
Starr, Gern, Davison & Rubin, Roseland, for amicus curiae The Association of Trial Lawyers of America-New Jersey (Jeffrey A. Rizika, of counsel; James A. Meszaros, on the briefs).
Before Judges LINTNER, GRAVES and ALVAREZ.
The opinion of the court was delivered by
LINTNER, P.J.A.D.
This appeal requires us to determine whether an otherwise uninsured passenger, not qualified to receive Medicaid, who is afforded medical payments limited to the emergency personal injury protection coverage afforded under the owner-operator's special insurance policy, is eligible to recover personal injury protection (PIP) *297 benefits for non-emergency medical treatment from the New Jersey Property-Liability Insurance Guaranty Association (PLIGA) as administrator of the Unsatisfied Claim and Judgment Fund (UCJF).[1] We hold that the UCJF is obligated to provide PIP benefits not covered by the emergency personal injury protection coverage payable to those passengers not eligible for Medicaid, as they otherwise would have been protected had PIP coverage been in force to satisfy their medical treatment expenses.
The facts are undisputed. Plaintiff, Omar Sanders, was injured while riding as a passenger in an automobile owned and operated by Patricia Leslie when it was involved in a two-car accident in Bloomfield with a vehicle operated by Norma Langemeier. Leslie's vehicle was insured by a special automobile insurance policy issued by Clarendon National Insurance Company (Clarendon) pursuant to N.J.S.A. 39:6A-3.3. Langemeier was insured with a standard automobile policy issued by Allstate Insurance Company (Allstate). Sanders sustained cervical, thoracic, and lumbar injuries and was taken to St. Mary's Medical Center (St. Mary's) where he was given emergency treatment and released. Thereafter, he came under the care of Dr. Paul Misthos at Sall/Myers Medical Associates where he received treatment and incurred medical bills in the amount of $2305.47.
Allstate's standard policy did not cover Sanders for PIP benefits because he was neither a named insured nor a member of the named insured's family residing in the named insured's household while occupying an automobile, nor a passenger while occupying the named insured's vehicle. See N.J.S.A. 39:6A-4. Under Leslie's special policy, Clarendon only paid Sanders' emergency medical care rendered at St. Mary's. Because the Clarendon policy only afforded emergency personal injury protection coverage, Sanders sought payment of Dr. Misthos' bills from the UCJF. When the UCJF refused payment, Sanders filed suit naming the UCJF as a defendant.[2]
Motions for summary judgment were filed by both Sanders and the UCJF. After oral argument, the motion judge concluded that the UCJF was required to provide the applicable coverage for Sanders' non-emergent care. In a written opinion issued on March 13, 2007, the judge denied the UCJF's motion for reconsideration.[3] This appeal followed.
We begin our analysis by reviewing the applicable statutes. In 1998, the Legislature adopted the Automobile Insurance Coverage Act (AICRA). Under AICRA, N.J.S.A. 39:6A-3 continued the requirement that every owner of a motor vehicle maintain automobile liability insurance coverage with minimum limits of $15,000 per injury and $30,000 per accident. See also N.J.S.A. 39:6B-1. A policy issued with the required $15,000/$30,000 limits is known as a "standard automobile insurance policy." N.J.A.C. 11:3-3.2.
*298 The standard policy under AICRA was required to "contain personal injury protection benefits." N.J.S.A. 39:6A-4. "`Personal injury protection coverage' means and includes . . . [p]ayment of medical expense benefits" up to $250,000 per person per accident, including "reasonable, necessary, and appropriate treatment . . . to persons sustaining bodily injury." N.J.S.A. 39:6A-4a. The $250,000 medical expense benefit, which had been mandatory prior to the adoption of AICRA, became the default option for a standard policy, with reduced coverage limits of $15,000, $50,000, $75,000, and $150,000 available at the election of the insured. N.J.S.A. 39:6A-4.3e.
With the passage of AICRA, the Legislature introduced a non-compulsory option known as the "basic automobile insurance policy." N.J.S.A. 39:6A-3.1. Later, in 2003, the Legislature created the "special automobile insurance policy," N.J.S.A. 39:6A-3.3.
The basic policy allows for up to $250,000 in medical benefits for injuries to the brain and spinal cord, as well as disfigurement and "other permanent and significant injuries" treated immediately following an accident at an acute care facility. N.J.S.A. 39:6A-3.1. It is also required to contain reduced PIP coverage in an amount not to exceed $15,000 for reasonable and necessary treatment, and $5000 for property damage liability coverage. Ibid. The legislation additionally required carriers issuing basic policies to provide "optional liability insurance coverage" with limits of $10,000. N.J.S.A. 39:6A-3.1c.
The special policy was established by the Legislature "[i]n order to assist certain low income individuals . . . and encourage their greater compliance in satisfying the mandatory private passenger automobile insurance requirements." N.J.S.A. 39:6A-3.3. In setting the limited income criteria for qualification, the statute directs the commissioner to limit the availability of the special policy "to those persons eligible and enrolled in the federal Medicaid program." Ibid. The special policy provides (1) "[e]mergency personal injury protection coverage"; (2) a "[d]eath benefit in the amount of $10,000"; (3) the limited lawsuit option pursuant to N.J.S.A. 39:6A-8a; and (4) no "liability, collision, comprehensive, uninsured or underinsured motorist coverage." Ibid.
The special insurance "[e]mergency personal injury protection coverage," provides benefits for the named insured and dependent family members residing in the named insured's household, "as defined by the federal Medicaid program," and "other persons sustaining bodily injury while occupying . . . the automobile of the named insured." N.J.S.A. 39:6A-3.3b. "Emergency personal injury protection coverage" covers "only payment of treatment for emergency care in an amount not to exceed $250,000 per person per accident." Ibid. "Emergency care" is defined as
all medically necessary treatment of a traumatic injury or a medical condition manifesting itself by acute symptoms of sufficient severity such that absence of immediate attention could reasonably be expected to result in: death; serious impairment to bodily functions; or serious dysfunction of a bodily organ or part. Such emergency care shall include all medically necessary care immediately following an automobile accident, including, but not limited to, immediate pre-hospitalization care, transportation to a hospital or trauma center, emergency room care, surgery, critical and acute care. Emergency care extends during the period of initial hospitalization until the patient is discharged from acute care by the attending physician.
[Ibid.]
*299 Medical care is presumed to be "emergency care" when it is "initiated at a hospital within 120 hours of the accident." Ibid. While "[e]mergency personal injury protection coverage" also includes "all medically necessary treatment of permanent or significant brain injury, spinal cord injury or disfigurement after the patient is discharged from acute care," a special policy does not include the coverage provided by the standard policy or the limited coverage provided by the basic policy for non-emergency reasonable and necessary medical treatment.
A noteworthy difference between the basic and special policies deals with the applicability of uninsured motorist (UM) coverage. N.J.S.A. 17:28-1.1e(2)(d) provides that vehicles covered with a basic policy are not considered uninsured motor vehicles whereas those covered by special policies are considered uninsured motor vehicles.
The Unsatisfied Claim and Judgment Fund Law (UCJF Law) was enacted by the Legislature in 1952 and codified at N.J.S.A. 39:6-61 to -91. Concomitant with the passage of AICRA, N.J.S.A. 39:6-62 was amended to provide that an uninsured motor vehicle shall not include a vehicle covered by a basic policy. N.J.S.A. 17:28-1.1 was also amended to except the basic policy from the requirement that policies include minimum UM coverage of $15,000/$30,000/$5000. With the creation of the special policy, the UM statute was amended to provide that an automobile insured with a special policy shall be considered an uninsured motor vehicle. N.J.S.A. 17:28-1.1e(2)(d).
N.J.S.A. 39:6-86.1 designates who is qualified to receive the medical benefits provided under the UCJF Law. It contains the following pertinent language:
When any person qualified to receive payments under the provisions of the "Unsatisfied Claim and Judgment Fund Law" suffers bodily injury . . . arising out of an accident while occupying . . . an automobile . . . for which personal injury protection benefits under . . . ([N.J.S.A.] 39:6A-1 et seq.) . . . would be payable to such person if personal injury protection coverage were in force and the damages resulting from such accident . . . are not satisfied due to the personal injury protection coverage not being in effect with respect to such accident, . . . then in such event the [UCJF] shall provide [the enumerated benefits, including those for] . . . "reasonable, necessary and appropriate treatment." (emphasis added).
The personal injury benefits afforded by the UCJF under N.J.S.A. 39:6-86.1 are equivalent to those afforded by the default provision in the standard policy, pursuant to N.J.S.A. 39:6A-4.
On appeal, the UCJF contends that the above quoted statute restricts eligibility for benefits to those limited circumstances where there is no PIP coverage in effect. The UCJF posits that because plaintiff had PIP coverage, albeit limited to emergent medical care, he is not remediless and, thus, is precluded from seeking treatment benefits provided by the UCJF Law. We disagree.
Clearly, for liability purposes, a vehicle covered with a special policy is considered an uninsured motor vehicle under the UCJF Law, while one covered by a basic policy is not. Thus, under the plain meaning of N.J.S.A. 17:28-1.1e(2) and N.J.S.A. 39:6-62, had there not been liability coverage on the Langemeier vehicle, Sanders would have been eligible to seek minimum standard policy pain and suffering damages from the UCJF. See N.J.S.A. 39:6-62; N.J.S.A. 39:6-69. As a passenger in a vehicle covered with a special policy, Sanders is a person "qualified to receive payments *300 under the provisions of the" UCJF Law. N.J.S.A. 39:6-86.1; N.J.S.A. 39:6-62. It therefore follows that because Sanders remains uninsured for medical treatment, other than emergency care, he is entitled to recover those unsatisfied, standard policy PIP benefits as if such coverage was in full force and effect.
The statutory "[e]mergency personal injury protection coverage" provided by a special policy is not equivalent to the "[p]ersonal injury protection coverage" afforded by the standard policy. Simply stated, they are not the same benefits. That is to say, the limited emergency medical benefits, as defined by N.J.S.A. 39:6A-3.3, do not match the definition of PIP benefits required in the standard policy or provided by the UCJF. N.J.S.A. 39:6A-4; N.J.S.A. 39:6-86.1. Because Sanders is not qualified to opt for the limited coverage afforded by the special policy, it would be antagonistic to the legislative intent to limit him to emergency medical coverage when he is not entitled to additional treatment benefits provided under the federal Medicaid program. See N.J.S.A. 30:4D-6 (delineating the types of care covered by Medicaid, including chiropractic treatment).
The UCJF argues that the Legislature's failure to amend N.J.S.A. 39:6-62 in 2003, when it created the special policy, to include vehicles covered with a special policy as uninsured vehicles, when, at the same time it amended N.J.S.A. 39:6-86.7, requiring the UCJF to provided PIP benefits to pedestrians, evinces an intent on the part of the Legislature not to cover persons such as Sanders for PIP benefits. It also asserts that N.J.S.A. 17:28-1.1e(2)(d), which identifies a vehicle insured with a special policy as an uninsured vehicle, allows claimants to look to their UM policies for coverage. The UCJF's contentions are misplaced.
Sanders does not have a UM policy. Clearly, if he did, he would be a covered person precluded from seeking UCJF benefits. As of 2003, N.J.S.A. 39:6-62 expressly provides that a person is not a "qualified person where such person is an insured under a policy provision providing coverage for damages sustained by the insured as a result of the operation of an uninsured motor vehicle in a form authorized to be included in automobile liability polices." Thus, there was no need for the Legislature to amend N.J.S.A. 39:6-62. Because Leslie's vehicle is considered an "uninsured vehicle" under N.J.S.A. 17:28-1.1e(2)(d) and Sanders does not have UM coverage, he is a qualified person.
The UCJF further contends that use of the words "[w]hen any person qualified to receive payments under . . . the [UCJF Law] . . . while occupying . . . an automobile . . . for which personal injury protection benefits under AICRA . . . ([N.J.S.A.] 39:6A-1 et seq.) . . . would be payable to such person if personal injury protection coverage were in force" in N.J.S.A. 39:6-86.1 (emphasis added), evinces an expressed intent on the part of the Legislature to exclude those who receive emergency personal injury protection benefits afforded by a special policy because such benefits are a part and parcel of the benefits created by AICRA. Again, we disagree. As previously indicated, the "[e]mergency personal injury coverage" afforded under N.J.S.A. 39:6A-3.3 is different from "personal injury protection benefits" afforded and defined in section 4 of AICRA. Simply stated, they are different coverages. Thus, our reading of N.J.S.A. 39:6-86.1 indicates a legislative intent to provide Sanders the reasonable and necessary treatment expenses that he would be entitled to and that would be provided by "personal injury protection benefits" if in full force. When it comes to no fault PIP *301 benefits, "`[t]he protection of innocent third parties is a primary concern.'" Rutgers Cas. Ins. Co. v. LaCroix, 194 N.J. 515, ___, 946 A.2d 1027 (2008) (quoting Proformance Ins. Co. v. Jones, 185 N.J. 406, 420, 887 A.2d 146 (2005)).
"When the words in a statute are clear, and their literal application is compatible with the overall legislative design, the interpretive process is satisfied by enforcement of the plain meaning of the words." Jones v. Naser City Transp. Corp., 388 N.J.Super. 513, 514, 909 A.2d 752 (App.Div.2006) (citing O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002); New Capitol Bar & Grill Corp. v. Div. of Employ. Sec., 25 N.J. 155, 160, 135 A.2d 465 (1957)). Indeed, the Administrative Code treats PIP benefits and emergency personal injury protection as two distinct types of insurance coverage. See N.J.A.C. 11:3-4.1 (identifying "personal injury protection medical expense benefits and emergency personal injury protection coverage" separately); N.J.A.C. 11:3-4.2 (defining "emergency personal injury protection coverage" as that which is available under a special policy); N.J.A.C. 11:3-4.3 (titled, "Personal injury protection benefits applicable to basic and standard policies," describing personal injury protection benefits to those included under the basic and standard policies and not limiting such coverage to emergency care).
Moreover, we read the UCJF Law and AICRA in pari materia. See, e.g., State Farm Mut. Auto. Ins. Co. v. Licensed Bev. Ins. Exch., 146 N.J. 1, 13, 679 A.2d 620 (1996); Gorton v. Reliance Ins. Co., 77 N.J. 563, 571, 391 A.2d 1219 (1978); Giles v. Gassert, 23 N.J. 22, 33-34, 127 A.2d 161 (1956); Serkes v. Parsekian, 73 N.J.Super. 344, 348-49, 179 A.2d 785 (Law Div.1962). In our view, our interpretation is consistent with AICRA and the UCJF Law's expression that a vehicle insured with a special policy is an uninsured motor vehicle.
Finally, the UCJF asserts that because Sanders was eligible for emergency personal injury coverage under Leslie's policy, he is not remediless. It argues that the UCJF is designed to protect the public from uninsured motorists, not from those who are insufficiently insured. See Gorton, supra, 77 N.J. at 572, 391 A.2d 1219. This is not a situation in which Sanders chose to purchase a lesser policy. To be sure, as a person not eligible for Medicaid benefits, he could not obtain a special policy, even if he wanted to.
Generally speaking, the UCJF Law "is to be liberally construed to advance the remedy . . . and to the fulfillment of the essential legislative policy. The literal sense of terms is not to have ascendancy over the reason and spirit of the expression as a whole." Giles, supra, 23 N.J. at 34, 127 A.2d 161. Although the UCJF "was never intended to make every claimant whole or to compensate all accident victims; . . . it was intended to `offer some measure of relief to those who come within the class intended to be protected, to prevent a claimant from being forced to absorb the entire economic loss caused by the accident.'" Jimenez v. Baglieri, 152 N.J. 337, 342-43, 704 A.2d 1285 (1998) (quoting Unsatisfied Claim & Judgment Fund Bd. v. N.J. Mfrs. Ins. Co., 138 N.J. 185, 189, 649 A.2d 1243 (1994)) (emphasis added). Sanders' ineligibility for Medicaid benefits and his status as an otherwise uninsured passenger in a vehicle covered by a special insurance policy bring him within the class of persons intended to be protected by the UCJF when medical expenses are not fully satisfied due to PIP benefits not being in force. Our determination is in accord with the applicable statutes and the essential purpose of the UCJF Law. Thus, we conclude that the *302 UCJF is required to provide Sanders with those reasonable and necessary medical treatment expenses incurred from the accident.
Affirmed.
NOTES
[1] As Administrator of the UCJF, PLIGA is named as defendant. For purposes of this opinion, we refer to the UCJF.
[2] Sanders also named Langemeier and Leslie as defendants, seeking damages for pain and suffering. He eventually settled his pain and suffering case with Langemeier for $4000 and dismissed his complaint against Leslie.
[3] The motion judge permitted the UCJF to file its motion for reconsideration relying in part on an unpublished Appellate Division opinion in Solano v. N.J. Property-Liability Insurance Guaranty Association, No. A-1471-05, 2006 WL 2312394 at *1 (App.Div. Aug. 11, 2006), which held that a person insured under a basic policy without the optional UM coverage is eligible to receive benefits under the UCJF.