Stambovsky and Cohen had been partners. They terminated the partnership by a dissolution agreement. Cohen later sued in chancery charging fraud and seeking a rescission of the agreement. Chancery found fraud but dismissed the bill on the ground of laches. Cohen then sued at law in a deceit action for damages, whereupon Stambovsky filed the present bill and was granted, on the ground of res adjudicata, a decree of permanent restraint against the law action. Cohen appeals. A more detailed statement follows.
Stambovsky and Cohen were partners in the drug business. One of the assets of the partnership was a formula called "heliol" for the prevention and treatment of sunburn. On April 5th, 1934, Cohen, for the consideration of $670.63, sold and assigned to Stambovsky all of the former's interest in the assets of the partnership, including the formula. For months prior thereto Stambovsky had secretly been in negotiation with a prospective purchaser concerning the sale of the formula although he represented to his partner that nothing was being done by him toward a sale and that apparently no one wanted to buy. At the very time of executing the dissolution agreement Stambovsky was on the eve of closing with his customer and on the following day did contract with that customer for the sale of the formula to it for a substantial sum of money, said to be about $10,000. Cohen, after the sale, filed a bill in chancery alleging that Stambovsky had fraudulently breached his partnership duty in concealing the fact of the pending sale of the formula and praying that the court rescind the dissolution agreement and order Stambovsky to make a discovery and an accounting. The matter came on for final hearing before Vice-Chancellor Berry, who found the facts from which the foregoing statement is gathered and whose disposition of the issues is epitomized in the following excerpt from his opinion:
"I haven't the slightest hesitation in finding that there was a fraud practiced upon the complainant by the defendant. *Page 292 
But this is a suit to rescind a contract * * * the law touching rescission is that a party wishing to rescind must act promptly. * * * I think the delay of some nine months after the complainant admits having had notice of this fraud, before actually taking steps to rescind, or actually giving notice of rescission of the contract, is fatal to the cause, and I am obliged to dismiss the bill on that account, although I must say that I do so reluctantly."
A decree dismissing the bill was entered. Cohen thereupon sued Stambovsky in the Ocean common pleas in an action for deceit charging intentional and willful fraud in the dissolution contract with respect to the formula. Stambovsky moved to strike the complaint upon the grounds that the complaint was sham and that the court was without jurisdiction because of resadjudicata. The motion was denied, not because the grounds stated were not cognizable in a law court but after consideration of them and a finding that they were not sound. Stambovsky then filed the present bill in chancery incorporating therein the earlier bill, the answer thereto and the order dismissing and also the order in the pleas denying his motion to strike the law complaint, and prayed for a decree of permanent injunction against the prosecution of the law action. A show cause for preliminary restraint issued. The matter was heard preliminarily and finally by Vice-Chancellor Stein. Preliminary restraint was granted on his advice, as also, in course, was permanent restraint.
In response to the bill Cohen had filed an answer in lieu of plea as follows:
"The decree of dismissal in the chancery suit, Docket 107, page 576, did not turn upon the decision of the same issues involved in the suit at law now pending in the Ocean county court of common pleas, and those issues are still undetermined. The decree in the chancery suit was predicated solely upon the determination of whether Cohen acted with sufficient promptness after discovery of the fraud practiced upon him to be entitled to the remedy of rescission. The court found the delay a bar to that type of relief. No other issue was decided." *Page 293 
Stambovsky moved to strike that pleading alleging that it (1) was sham, (2) disclosed no defense in equity, and (3) was not a proper pleading — that the defendant's correct practice was to move to strike the bill. An order striking the answer in lieu of plea was allowed on the several grounds stated in the motion. Final decree carrying permanent injunction then issued; without the filing of an opinion, as is made to appear before us. The appeal is from the final decree.
The answer was not sham. It did not undertake to recite the purpose or the prayer of the first bill in chancery. It stated that the decree thereunder did not turn upon a decision of the same issues presented in the law action but was predicated solely upon the question whether Cohen had acted with sufficient promptness to be entitled to the remedy of rescission. That that was the truth may be gleaned from the summary of the vice-chancellor's findings, supra. A sham pleading is false in fact. Holdman v. Tansey, 107 N.J. Law 378. The answer herein "is not sham because it is not false in fact." In re Beam,93 N.J. Eq. 593, 596.
The function served by an answer in lieu of plea is to present new matter not apparent in the bill. Davis v. Davis, 57 N.J. Eq. 252;Kelly v. Masionis, 79 N.J. Eq. 644. The new matter in the instant case was the resume of the facts and reasons, contained in Vice-Chancellor Berry's conclusions, upon which the first decree was granted; not artistically pleaded, but nevertheless obviously forming the substance of the answer. The retention of that form of pleading is evidenced by chancery rule 111 and by form 102 in the schedule of forms appended to the rules. The suggestion that the defendant's proper procedure was to move to strike, with the effect of a demurrer, is without force inasmuch as the matter injected by the answer is not to be found in the bill.
On the preliminary application the vice-chancellor filed an opinion wherein he held that "The parties and the cause of action being identical and the remedy sought the same [viz., in the pleas and prior thereto in the chancery action tried before Vice-Chancellor Berry], and the cause having been once adjudged by a competent court upon its merits, *Page 294 
it is conclusive upon the parties and a complete bar to a subsequent suit." In the absence of other statement of reasons, we assume that the decree appealed from was allowed for the same reasons. Similar in that the same fraud was counted upon and somewhat similar in other respects, the causes of action, that is to say, the first suit in equity and the suit at law, were nevertheless not identical. The equity suit was much the broader. It anticipated a future relationship between the parties entirely absent in the law suit. It sought to rescind the entire dissolution contract and to reinstate the parties as partners in the drug business. Incidentally it sought discovery and an accounting; but primarily it was a suit for rescission. The law suit simply sought to recover damages for fraud in the "heliol" transaction. The chancery decision in the earlier suit did not find against the existence of fraud; quite the contrary. But it held that the defrauded person had not moved with the promptness — there was a delay of some nine months after knowledge of the fraud — necessary to secure a rescission of the contract. Laches is a term which baffles precise definition. It is of inconstant significance, and its effectiveness varies with the assembled circumstances of each particular case. It is frequently a controlling reason why a complainant or a plaintiff is not permitted to prosecute what is in itself an actionable claim. As a defense it may have high merit, and yet it does not usually go to the merits of the cause of action. It does not necessarily follow that because nine months of standing by with knowledge equitably estops the present defendant from making the fraud a justification for the complete re-establishment of his partnership relations, the defendant may not hold the complainant to the damages that flow from the specific act of deceit in the "heliol" transaction. Pom. Eq. Jur. (4th ed.) 1677 § 817, states:
"Acquiescence in the wrongful conduct of another by which one's rights are invaded may often operate, upon the principles of and in analogy to estoppel, to preclude the injured party from obtaining many distinctively equitable remedies to which he would otherwise be entitled. This form of quasi estoppel does not cut off the party's title, nor his remedy at law; it simply bars his right to equitable relief, and leaves him to his legal actions alone." *Page 295 
In Henninger v. Heald, 51 N.J. Eq. 74, a chancery decision favorably cited by this court in Benjamin v. Van Voorhis,106 N.J. Eq. 196, Vice-Chancellor Bird quoted with approval fromHughes v. United States, 4 Wall. 232:
"In order that a judgment may constitute a bar to another suit, it must be rendered in a proceeding between the same parties or their privies, and the point of controversy must be the same in both cases, and must be determined on its merits. If the first suit * * * was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit."
Where a prior judgment is raised as an estoppel inquiry must be made as to the point or question actually litigated and determined, for it is upon such matters that the judgment is conclusive. Sarson v. Maccia (Court of Chancery), 90 N.J. Eq. 433,437. In Phillips v. Phillips, 119 N.J. Eq. 497,
this court, in an opinion by the chief-justice, held that the term res adjudicata connoted a final disposition on themerits and rejected the application of the principle in that case for the reason, or at least for this among other reasons, that the fact issue had never been determined. In the rescission suit between the present parties the decree was one of dismissal, but the adjudication may in nowise be regarded as a finding adverse to the defendant herein on the presence vel non of fraud.
We think that, within the meaning of the rule as to resadjudicata, the merits of the law action were not determined in the rescission suit and that the denial to Cohen of the peculiarly equitable remedy of rescission by court decree does not estop him from prosecuting the suit at law for damages arising out of the allegedly fraudulent act. Consequently, the decree in the rescission suit was not res adjudicata against the action at law, and the answer in lieu of plea presented an equitable defense and should not have been struck. It was for the lack of a defense, the answer having been struck, that the final decree granting permanent restraint was allowed.
The only other point presented on behalf of respondent is *Page 296 
that "the petition of appeal does not comply with the rule which requires some specification of the grounds upon which the appellant claims the decree below to be erroneous." The petition, in our opinion, reasonably states the grounds of appeal.
We do not perceive the theory upon which chancery undertook to restrain the law action because of res adjudicata. That ground had been urged and rejected in the law action. If the pleas was wrong in its determination, an appeal, in course, lay; not, however, to chancery. Red Oaks, Inc., v. Dorez, Inc., 120 N.J. Eq. 282.
A defendant litigant in a law court may there be met with an adverse ruling from which an appeal lies and still, in appropriate circumstances, pursue the aid of the court of chancery in establishing his equitable defenses. PalisadeGardens, Inc., v. Grosch, 121 N.J. Eq. 240. But the doctrine of res adjudicata is not of equitable origin. It was first definitely formulated in the Duchess of Kingston's Case, 2 Sm.Lead. Cas. [*]573, on questions, put by the Lords Spiritual and Temporal in Parliament to the Judges, arising out of an indictment for polygamy. It has equal application in all courts. In the instant case there were no incidental equities to be considered. There was mention in Vice-Chancellor Berry's opinion that a claim of ratification had been raised, but he did not decide the point, and there has been no later suggestion regarding it. The simple question was whether the matter sued upon had been adjudicated, and the answer to that question was to be reached upon the same facts, according to the same judicial concepts and by the same reasoning in either court. It cannot be that a ruling by a law court becomes the proper subject of equitable intervention merely because it is thought to be wrong. Where the law courts are competent to do justice in pending litigation, interference by a court of equity is without ground.Victor Talking Machine Co. v. Caubre, 116 N.J. Eq. 592;Savage v. Edgar, 86 N.J. Eq. 205.
The decree below will be reversed and the record remitted to the court of chancery for disposition consistent with this opinion. *Page 297 
 For affirmance — None.
For reversal — THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 15.