915 A.2d 89 (2007)
390 N.J. Super. 277
RUTGERS CASUALTY INSURANCE COMPANY, Plaintiff-Respondent,
v.
Robert LaCROIX and Chrissy LaCroix, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 2006.
Decided February 5, 2007.
*90 Bridget Saro argued the cause for appellants (Frank J. Zazzaro, Montclair, attorneys; Ms. Saro, on the brief).
Susan L. Moreinis, Collingswood, argued the cause for respondent.
Before Judges LISA, HOLSTON, JR. and GRALL.
The opinion of the court was delivered by
HOLSTON, JR., J.A.D.
This is an insurance coverage case. Defendant, Chrissy LaCroix (Chrissy), sustained serious personal injuries in a July 10, 2003 automobile accident. She was driving a vehicle owned by her father, Robert LaCroix (Robert), and insured by plaintiff, Rutgers Casualty Insurance Company (Rutgers). She had her father's permission to drive the car. Chrissy appeals from the Law Division's March 1, 2006 order, entered after a bench trial, denying her the right to receive Personal Injury Protection (PIP) benefits under the personal automobile policy issued by Rutgers to Robert. We reverse.
The facts, which were established in the bench trial, are not in dispute. On August 8, 2002, Robert completed and signed a Rutgers personal automobile insurance application for liability, PIP, medical payments, and uninsured motorist insurance coverage. Robert listed himself as the applicant and 15 B Pacific Drive, Winfield, as his residence. Page one of the application contained a block for the applicant to list "ALL LICENSED and UNLICENSED individuals permanently and/or temporarily residing with applicant." Robert listed two of his daughters, Glenda and Maria. However, Robert failed to list Chrissy as a licensed driver permanently residing with him. Chrissy, who was age eighteen and Robert's youngest daughter, was living with him at the time of the application. The insurance application also contained a section highlighted in red, titled "Applicant's Statement," which in applicable part confirmed that Robert had listed all permanent residents of his household and acknowledged Robert's understanding that this information was a material representation relied upon by Rutgers in determining whether to insure him. On the same date, Robert signed and furnished to Rutgers a document entitled "Confirmation," in which he acknowledged his understanding that the insurance application required him to list all permanent residents of his household. Relying on Robert's representations in the application and confirmation, Rutgers issued a personal automobile policy for one year, effective August 16, 2002 to August 16, 2003.
In 2003, Chrissy drove Robert's car two to three times a week. It is undisputed that Chrissy had no part in or knowledge of her father's failure to name her in the application as a licensed driver permanently residing in his household.
After Chrissy's July 10, 2003 accident, a claim for PIP benefits was filed on her behalf with Rutgers. During Rutgers' investigation of Chrissy's claim, Robert admitted in a statement he gave to an insurance company investigator that he did not list Chrissy on the policy application "to keep the cost down." According to the *91 testimony of a Rutgers' senior underwriter, the policy premium would have increased by approximately $500 if Chrissy's name had been disclosed.
As a result of Robert's misrepresentation, Rutgers filed a complaint seeking that the policy be declared void ab initio, thereby negating any liability of Rutgers to pay PIP benefits on behalf of Chrissy. Chrissy, contending that she was an innocent third party entitled to benefits under Robert's policy, counterclaimed for payment of her medical bills pursuant to the PIP coverage contained in her father's policy.
N.J.S.A. 39:6A-4 mandates that
Every standard automobile liability insurance policy . . . shall contain personal injury protection benefits for the payment of benefits without regard to . . . fault of any kind, to the named insured and members of his family residing in his household who sustain bodily injury as a result of an accident while occupying . . . or using an automobile . . . and to other persons sustaining bodily injury while occupying . . . or using the automobile of the named insured, with permission of the named insured.
In Palisades Safety & Insurance Association v. Bastien, 175 N.J. 144, 147-48, 814 A.2d 619 (2003), the Supreme Court stated the legislative underpinnings of N.J.S.A. 39:6A-4:
The Legislature provided for PIP benefits as part of New Jersey's no-fault compulsory automobile-insurance system in the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35 (the Act). Since their enactment in 1972, PIP statutory benefits are a required component of every standard automobile insurance policy, and provide an efficient system of "recovery for losses sustained in automobile accidents." Stated generally, the benefits include payment of medical expenses, without regard to fault, for the named insured and resident members of his or her family, others occupying a vehicle of the named insured, or pedestrians injured in an automobile accident. N.J.S.A. 39:6A-4.
As remedial legislation that is protective of automobile accident victims, the PIP statute is given liberal construction to provide such victims with the "broadest possible coverage."
[(internal citations omitted).]
Nevertheless, the Court pointed out that "such coverage is unavailable when it is sought as part of an insured's first-party claim for benefits under his or her own policy of insurance declared void because of material misrepresentations made to the insurer." Id. at 148, 814 A.2d 619. Chrissy concedes that Robert's intentional omission of her name from the insurance application constituted a material misrepresentation. See Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 542, 582 A.2d 1257 (1990).
In a series of cases, we have imposed coverage in favor of innocent third parties, while at the same time voiding coverage to the first-party insured as a result of the insured's material misrepresentations to his insurer. See Dillard v. Hertz Claim Mgmt., 277 N.J.Super. 448, 650 A.2d 1 (App.Div.1994), aff'd o.b., 144 N.J. 326, 676 A.2d 1065 (1996); Mannion v. Bell, 380 N.J.Super. 259, 262-63, 881 A.2d 810 (Law Div.2005); Fisher v. N.J. Auto. Full Ins. Underwriting Ass'n., 224 N.J.Super. 552, 556, 540 A.2d 1344 (App.Div.1988).
The trial judge, relying on this court's opinion in Lovett v. Alan Lazaroff & Company, 244 N.J.Super. 510, 513, 582 A.2d 1274 (App.Div.1990), and the Supreme Court's decision in Palisades, supra, 175 N.J. at 147-48, 814 A.2d 619, determined *92 that Chrissy was not an innocent third party and could not recover PIP benefits under her father's policy. The court declared the policy void ab initio and entered judgment in Rutgers' favor.[1]
In Lovett, supra, the son of the owner of a personal automobile insurance policy was injured while a passenger in an uninsured vehicle involved in an accident in New York. The son sought to obtain PIP benefits as an additional insured under the policy issued to his mother. The son's accident occurred after his mother's initial premium check was dishonored because the account on which the check had been written was closed, and after the insurer's representative notified the mother that the check was dishonored and demanded payment (which was never made), but before the date on which the notice of cancellation ab initio was provided by the insurance company to the mother. This court affirmed the trial judge's finding that the insurance policy was void ab initio. We determined that the son's claim was not that of an innocent third party injured as a result of the operation of the insured vehicle, but rather that of an additional insured seeking to recover under the terms of a void contract. Id. at 511-14, 582 A.2d 1274.
Relevant to our decision was the fact that the mother's insurance policy was a New Jersey Automobile Full Insurance Underwriting Association (JUA) policy issued by its servicing insurance carrier, Continental Insurance Company. We pointed out that "[t]he statute creating JUA preconditioned coverage on a timely payment of the initial premium." Id. at 512, 582 A.2d 1274. N.J.S.A. 17:30E-3(m) provided: "No person shall . . . be deemed a qualified applicant . . . if timely payment of premium is not tendered." Ibid. We further noted: "In accordance with this statutory directive, the application, which [the mother] signed provided: `(6) I agree that no coverage will be in effect if my premium remittance, which accompanies this application and is forwarded to the servicing carrier, is justifiably dishonored by the financial institution.'" Ibid. We are satisfied that the unique law pertaining to JUA policies as applied to the facts in Lovett distinguishes Lovett from this case. See Megan K. Gajewski, Comment, Automobile Insurance Reform in New Jersey: Could a Pure No-Fault System Provide a Final Solution, 25 Seton Hall L.Rev. 1219 (1995) (stating that the Legislature enacted the JUA specifically to counter the economic burden high-risk drivers placed on insurance companies and prevent these companies from leaving the State).
In Palisades, supra, a husband, who resided with his wife, intentionally failed to name her on an application for automobile liability insurance. The insurance application required him to state his marital status and to list all household residents of driving age. The husband falsely represented that he was single and the sole driver of the vehicle he sought to insure. Based on the husband's misrepresentations, the insurance company (Palisades) issued a policy for a lesser annual premium. The husband thereafter continued the misrepresentation he made at the time of his initial application. He twice submitted documents that indicated he was the sole licensed driver and household resident over the age of sixteen and added a third car to his policy premised on the same *93 misinformation. Palisades, 175 N.J. at 146, 814 A.2d 619.
During the policy period, the wife and her mother were in an accident while driving the husband's car, which was insured under the policy. Id. at 147, 814 A.2d 619. Each filed a claim for PIP benefits under the policy. Ibid. Palisades thereafter filed a declaratory judgment action to have the policy declared void ab initio and to negate any liability for PIP benefits to the wife, as an additional insured under the policy. Ibid.
The Court concluded that there was no question that the husband had made material misrepresentations beginning with his application and continuing throughout the insurer/insured relationship, which affected Palisades' assessment of the risks and the premium charged. Id. at 149, 814 A.2d 619. As a result, the Court determined that Palisades was entitled to an order declaring the policy void. Ibid. The court made clear, however, that although the company may rescind the policy, "thereby disentitling [the husband] to any PIP coverage as the named insured, that does not mean that [the insurance company] escapes liability to innocent, third-party members of the public, whose protection is a paramount concern of the PIP, no-fault system." Ibid.
The Court thus framed the issue as "how to treat a resident spouse . . . under her household's voided automobile insurance policy." Id. at 150, 814 A.2d 619. In making its determination, the Court assumed that the wife was unaware of her husband's intentional misrepresentation. Ibid. The court noted that the wife met the requirement of an additional "named insured" under N.J.S.A. 39:6A-2(g).
N.J.S.A. 39:6A-2(g) reads in applicable part: "Named insured means the person . . . identified as the insured in the policy and, if an individual, his . . . spouse, if the spouse is named as a resident of the same household." Based on this statutory definition of "named insured" and the husband's misrepresentation of his marital status, the Court noted that Palisades was unable to assess the additional first-party risk of a second driver in the household, in insuring the household's vehicles. Palisades, supra, 175 N.J. at 150, 814 A.2d 619. The Court thus concluded that the husband's failure to identify his wife, either as his spouse or as another person of driving age residing in the household, should not elevate the wife to a different status than she would have had under the law had the application been honestly answered. Ibid. The Court identified her status as a first party, additional named insured claimant. Ibid.
In this case, Robert's personal automobile policy in the PIP coverage endorsement defines "named insured" as the person named in the declarations and that person's spouse if a resident of the household.[2] However, the insuring agreement in paragraph 2 provides: "With respect to Principal Personal Injury Protection Coverage, insured means . . . [t]he named insured or any family member who sustains bodily injury while . . . [o]ccupying or using an auto." "Family Member" is defined in the "Definitions" section as "a person related to you by blood . . . who is a resident of your household." Thus, unlike the wife in Palisades, Chrissy is not a named insured under the policy. Instead, she occupies the lesser status of a first-party, additional insured under the policy.
In Palisades, supra, the wife argued that notwithstanding her status as a first-party *94 additional named insured claimant, she should "be treated as an [innocent] third-party claimant because she did not know that her husband had lied to Palisades about her, thereby causing their policy of auto insurance to be voided." Palisades, 175 N.J. at 150, 814 A.2d 619. The Court concluded that the wife should not be given third-party claimant status. The Court determined that, in the case of a spouse, it was not appropriate, notwithstanding the policies underlying PIP protection that it had previously described and the wife's lack of knowledge of her husband's misrepresentations, to treat her differently from her husband under the void policy. Id. at 151, 814 A.2d 619. The Court explained its rationale for not treating the wife differently from her husband:
A spouse, licensed to drive and living in the same household as the other spouse, is in a unique position to be aware of the other spouse's interactions with the insurer of the household's vehicles. Responsible adults should inform themselves in respect of important insurance-related matters pertinent to their household, and should be encouraged to do so. The strong public policy against the proliferation of insurance fraud favors treating a resident spouse in [wife's] position in the same manner as her husband, that is, entitled to first-party coverage only, when available. The facts here are distinguishable from those cases involving true third parties who were allowed to recover under a void policy.
[Ibid. (emphasis added).]
The Court then stated: "We hold that the public policy that requires an insurer to pay innocent third parties injured in automobile accidents minimum PIP benefits available under our compulsory insurance requirement does not apply to a resident spouse in [the wife's] position." Id. at 152, 814 A.2d 619.
We must determine whether Chrissy should have the status of an innocent party for purposes of availability of PIP coverage or be denied that status as an extension of the Palisades holding. Our analysis requires consideration of the policy underlying the allowance of recovery by innocent third parties weighed against the competing public policy of discouraging and deterring insurance fraud by the insured applicant. Our determination also requires consideration of the relationship between a parent and adult child residing in the same household as compared to the relationship between husband and wife.
In Fisher, supra, we discussed the policy underpinnings for permitting recovery by innocent third-parties:
One of the purposes of the No-Fault Law is to afford reparation for objectively provable economic losses resulting from automobile accidents. . . . This is social legislation designed to give the broadest protection to automobile accident victims consistent with the language of its pertinent provisions.
It is abundantly clear that the beneficiaries of our No-Fault Law and the insurance policies issued in compliance therewith . . . are members of the public who, like plaintiff, may be injured in an automobile accident. The insurance carrier's liability to its assured who may be guilty of some act or conduct which renders a policy void ab initio is therefore distinct from its liability to an injured third person.
[Fisher, 224 N.J.Super. at 557, 540 A.2d 1344 (internal citations omitted).]
We are satisfied that the "unique position" of a spouse, which the Court identified in Palisades, does not apply to adult children residing in their parent's household. See Craig & Pomeroy, New Jersey *95 Auto Insurance Law, § 2:5-3b at 47-48 (2007), ("[t]he Court [in Palisades] did not address the potential application of innocent third party status to unnamed children, or unnamed unlicensed spouses"). The duty imposed by the Court on a spouse, to inform herself in respect of important insurance related matters, arises from the marital relationship. The unique relationship of husband and wife places them on an equal footing with each other with respect to the economic affairs of their marriage. See Konzelman v. Konzelman, 158 N.J. 185, 204, 729 A.2d 7 (1999) (O'Hern, J., dissenting) ("[i]n a long series of cases, we have come to recognize that marriage is both an affair of the heart and a form of economic partnership"). However, children occupy a lesser position in the family structure, particularly with regard to the economic decisions of their parents and the family household. They are not on an equal economic footing with their parents.
We are convinced, therefore, that Palisades, supra, does not impose an obligation on a resident child of an insured parent to check the automobile insurance application completed by his or her parent to determine if the parent named him or her as a resident licensed driver. It is simply unrealistic to expect a resident child to do so. Further, there is no corresponding duty on a parent to notify his or her child of the contents of the automobile insurance applications they have completed.
We view Chrissy's claim for PIP benefits to be analogous to the claim of a person driving an insured's car with permission. In this case, the Rutgers insuring agreement includes in its definition of "insured," in addition to the named insured or any family member, "any other person who sustains bodily injury while occupying or using your covered auto with the express permission of the named insured." Palisades clearly would not impose a duty to inform oneself on persons occupying the "any other person" status.
Palisades makes clear the equally strong public policy of deterring insurance fraud. Palisades, 175 N.J. at 152, 814 A.2d 619. Indeed, the Court stated that to have allowed the wife to have recovered under the circumstances of her husband's intentional misrepresentation would result in a disincentive to a married insurance applicant to tell the truth. Ibid. Clearly, an insurance company, by virtue of such material misrepresentations as existed in Palisades, and here, is a victim of unfair risk assumption.
We are of the view, however, that insureds such as Robert will potentially suffer sufficient repercussions from their actions to create a disincentive to making misrepresentations such as Robert made here. Robert's policy is rescinded. Additionally, Robert is potentially liable to Rutgers under the provisions of the New Jersey Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30. Further, Robert may be liable for causes of action under legal and equitable fraud principles. Rutgers' complaint seeks, as compensatory damages, reimbursement of the amount of any money it is required to pay Chrissy, the right to retain any unearned premium, and the award of any additional premium, which would have been charged had Robert disclosed the true facts existing at the time the application was submitted. Additionally, pursuant to N.J.S.A. 17:33A-5, the Commissioner of Insurance may bring a civil action against an insurance fraud violator, levy a civil administrative penalty and order restitution, and in an appropriate case request the Attorney General to bring a criminal action under applicable criminal statutes.
*96 We hold that Chrissy, although a first-party additional insured under her father's policy with Rutgers, was an innocent party entitled to the protections afforded by the compulsory PIP coverage provided by N.J.S.A. 39:6A-4. The public policy that requires an insurer to pay innocent third parties injured in automobile accidents minimum PIP benefits under our compulsory insurance requirements, Fisher, supra, 224 N.J.Super. at 558, 540 A.2d 1344, likewise applies to an innocent child of an insured, unaware of her parent's material misrepresentations in his insurance application, residing in the insured's household, and who is a licensed driver injured in an automobile accident while driving her insured parent's car with permission.
Accordingly, we reverse the provision of the Law Division's order of March 1, 2006, which denied Chrissy statutorily mandated PIP benefits. We affirm the order's provisions voiding the policy ab initio as to Robert, reducing the PIP benefits available to Chrissy to the minimum benefits mandated by statute and denying Chrissy UIM benefits.[3] We remand this matter to the trial court to conduct such proceedings as it deems appropriate consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Chrissy's counterclaim also sought underinsured motorist (UIM) benefits under Robert's policy. At oral argument, Chrissy's counsel conceded that established law precludes Chrissy's right to obtain UIM benefits and withdrew Chrissy's appeal of the portion of the court's order denying her UIM benefits.
[2] Based on our request at oral argument, plaintiff's counsel has supplied to this panel and defendant's counsel a sample Rutgers' policy effective as of the relevant dates.
[3] Chrissy agrees that her PIP recovery is limited by our cases to the minimum coverage mandated by statute. See Dillard, supra, 144 N.J. at 327, 676 A.2d 1065; Marotta v. N.J. Auto. Full Ins. Underwriting Ass'n., 144 N.J. 325, 676 A.2d 1064 (1996).