946 A.2d 1027

RUTGERS CASUALTY INSURANCE COMPANY, PLAINTIFF–
APPELLANT, v. ROBERT LACROIX AND CHRISSY
LACROIX, DEFENDANTS–RESPONDENTS.

Argued November 28, 2007—Decided May 14, 2008.

516

*Susan L. Moreinis* argued the cause for appellant.

*Francis J. Zazzaro* argued the cause for respondents (*Mr. Zazzaro,* attorney; *Bridget Saro,* of counsel and on the brief).

Justice LaVECCHIA delivered the opinion for the Court.

In this appeal we have been asked whether an eighteen-year-old girl, injured while driving her father's automobile, should be barred from personal-injury-protection (PIP) benefits under her father's automobile insurance policy because, unbeknownst to her, her father had not identified her as a household resident in his insurance application. The insurer takes the position that the

father's material misrepresentation rendered the policy void *ab initio*, and that, therefore, no PIP benefits are payable to the injured daughter. We hold that the father's material misrepresentation entitled the insurer to rescission of the insurance contract, but that, under these compelling factual circumstances, the equitable remedy of rescission properly was molded to require payment of the statutorily required minimum level of PIP benefits to this young victim.

## I.

The bench trial in this matter provides the essential facts in this family tragedy. In an admitted attempt to secure lower premium payments, Robert LaCroix disregarded the plain language of the Rutgers Casualty Insurance Company (Rutgers Casualty) application for automobile insurance when he intentionally failed to disclose that Chrissy, the youngest of his three daughters, resided in his household.[1] LaCroix only listed his two older daughters as residents of his household, each of whom had her own car and insurance policy. Thus, LaCroix withheld information only about the sole uninsured motorist in his household, Chrissy.

Based on LaCroix's application information, Rutgers Casualty issued an automobile insurance policy, effective August 16, 2002, that, during the policy period, covered the vehicles that LaCroix garaged at his home in Winfield, New Jersey.[2] Had LaCroix

---

[1] The application requires applicants to list "ALL LICENSED and UNLICENSED individuals permanently and/or temporarily residing with [the] applicant" and later requires the applicant to affirm that "all permanent and temporary residents of [the applicant's] household" are named in the application. Rutgers Casualty also has applicants sign a "Confirmation of All Permanent and Temporary Residents of My Household," which recites that "this application for insurance requires [the applicant] to list all permanent and temporary residents of my household ... whether licensed or unlicensed." LaCroix's misrepresentation was consistent throughout these documents.

[2] Later during that initial policy term, an addition and change in covered vehicles was filed by LaCroix.

identified Chrissy as a resident family member of driving age, the annual premium for the policy would have increased by approximately five-hundred dollars, making LaCroix's misrepresentation plainly material to the insurer. LaCroix's misrepresentation had the collateral consequence of placing his eighteen-year-old daughter in potential jeopardy. That jeopardy became manifest on July 10, 2003, when she was injured while driving one of her father's cars with his permission.

An automobile operated by Ernestine Lucas struck Chrissy's car after Lucas failed to stop at an intersection. Chrissy sustained a fracture of her right femur, which required surgery. She also suffered additional injuries to her neck, lower back, knee, and forehead. When a PIP claim was filed on Chrissy's behalf, Rutgers Casualty realized that LaCroix had omitted Chrissy's name from his application the previous August. Rutgers Casualty filed a complaint seeking a declaration that LaCroix's policy was void *ab initio* and that, therefore, Rutgers Casualty was not required to pay benefits to Chrissy under the void policy.[3] LaCroix and Chrissy filed counterclaims for PIP benefits and underinsured motorist (UIM) coverage.

During the trial, Chrissy testified to her limited knowledge concerning automobile insurance. Her testimony revealed that she never discussed automobile insurance with her father, she did not know what insurance carrier provided coverage for her father's vehicles, and she had no understanding of the automobile insurance application process. As of the time of the accident, she had never owned a car or insured a vehicle, nor did she contribute to the payment of her father's insurance premium. Concerning her use of her father's cars, she admitted that, during 2003, she drove one of her father's cars generally two to three times a week because she did not have a car of her own. Cumulatively, her understanding about the legal requirement of automobile insur-

---

[3] A default judgment was entered in favor of Rutgers Casualty in June 2004. A consent order between the parties later vacated that judgment.

ance could be summarized as only knowing that a vehicle "was supposed to be insured" and that "there was supposed to be a [proof-of-insurance card] in the glove box." [4]

When the trial concluded, the court held that LaCroix's material misrepresentation in his insurance application rendered the Rutgers Casualty automobile policy void *ab initio.* In addressing Chrissy's claims, the court found that, because she was a relative of the named insured and resided in his household, Chrissy "would have been entitled to first party coverage when available under her father's policy." However, because the policy was void as to LaCroix, it likewise became void for all other potential first-party claimants under the policy, a class that included Chrissy. Thus, the court declared that Chrissy was not entitled to coverage and entered an Order on March 1, 2006, denying her PIP benefits and UIM coverage.[5]

An appeal to the Appellate Division resulted in the reversal of that portion of the trial court's Order that denied PIP benefits to Chrissy under LaCroix's policy. *Rutgers Cas. Ins. Co. v. LaCroix,* 390 *N.J.Super.* 277, 288, 915 *A.*2d 89 (2007). Although the panel agreed that the policy correctly was declared void *ab initio,*[6] it

---

[4] Rutgers Casualty has not alleged that Chrissy became aware, or should have become aware, of her insurance-related obligations through her required driver's education program, nor are we able to confirm whether such educational courses cover insurance obligations or to what degree that subject is broached. *See* New Jersey Dep't of Transp., *Pedestrian Safety: A Priority in New Jersey* 5 (2006) (discussing, in 2006, prospect of "statewide driver education curriculum," and noting that "[the] MVC, NJDOT, the Attorney General's Office and the Department of Education are currently developing a driver's education curriculum [that] will focus on the rights and the responsibilities of a driver and laws protecting pedestrians who cross our roadways").

[5] The parties no longer dispute the denial of UIM coverage. *See Rutgers Cas. Ins. Co. v. LaCroix,* 390 *N.J.Super.* 277, 288, 915 *A.*2d 89 (App.Div.2007).

[6] The parties agree that LaCroix's omission of Chrissy's name on the Rutgers Casualty application, which resulted in his obtaining a lesser annual premium, constituted a material misrepresentation that voids the policy *ab initio* as to LaCroix. *See Longobardi v. Chubb Ins. Co. of N.J.,* 121 *N.J.* 530, 542, 582 *A.*2d

concluded that, under the circumstances, Chrissy was "an innocent party entitled to ... compulsory PIP coverage" under the void policy. *Id.* at 287–88, 915 *A.*2d 89. The panel noted that Chrissy plainly was "unaware of her parent's material misrepresentations in his insurance application." *Id.* at 288, 915 *A.*2d 89. Further, it is "simply unrealistic" to "impose an obligation on a resident child of an insured parent to check the automobile insurance application completed by his or her parent to determine if the parent named him or her as a resident licensed driver." *Id.* at 286, 915 *A.*2d 89. In emphasizing the subordinate status of a child residing in her parent's home, the panel distinguished its holding from this Court's earlier decision in *Palisades Safety & Insurance Ass'n v. Bastien*, 175 *N.J.* 144, 814 *A.*2d 619 (2003). *LaCroix, supra,* 390 *N.J.Super.* at 285–87, 915 *A.*2d 89.

We granted Rutgers Casualty's petition for certification, 191 *N.J.* 316, 923 *A.*2d 231 (2007), and, thereafter, allowed the insurer to amend its petition. Specifically, we agreed to determine the maximum amount of PIP benefits that must be paid if we were to conclude that Rutgers Casualty must provide PIP benefits to Chrissy under her father's void policy.

## II.

The development of New Jersey's no-fault system of first-party recovery for injuries sustained in automobile accidents has been recounted by this Court on numerous occasions. *See, e.g., DiProspero v. Penn,* 183 *N.J.* 477, 485–89, 874 *A.*2d 1039 (2005); *Caviglia v. Royal Tours of Am.,* 178 *N.J.* 460, 466–71, 842 *A.*2d

---

1257 (1990) (requiring that applicant's misrepresentation be "material" before insurer has right to void policy *ab initio* ); *see also Mass. Mut. Life Ins. Co. v. Manzo,* 122 *N.J.* 104, 115, 584 *A.*2d 190 (1991) (defining "materiality" as anything that " 'naturally and reasonably influence[d] the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium.' " (quoting *Kerpchak v. John Hancock Mut. Life Ins. Co.,* 97 *N.J.L.* 196, 198, 117 *A.* 836 (E. & A.1922) (alteration in original))).

125 (2004). The prompt distribution of PIP benefits to accident victims has remained a staple of the no-fault system since that system was first developed. *See Amiano v. Ohio Cas. Ins. Co.*, 85 *N.J.* 85, 90, 424 *A.*2d 1179 (1981). By shifting from a fault system to a system of first-party coverage, our socially conscious no-fault legislation aims at "provid[ing] a minimum amount of protection to the public for injuries caused by … automobile[s]." *Newcomb Hosp. v. Fountain*, 141 *N.J.Super.* 291, 294, 357 *A.*2d 836 (Law Div.1976). *See generally* Craig & Pomeroy, *New Jersey Auto Insurance Law* § 4:1 (2008) (enumerating four broad objectives served by requiring PIP benefits to be provided through every automobile policy for private passenger motor vehicles in this state).

The current no-fault scheme contained in the New Jersey Automobile Insurance Cost Reduction Act (AICRA), *N.J.S.A.* 39:6A–1.1 to –35, likewise imposes a requirement that insurers promptly pay PIP benefits to reimburse persons injured in automobile accidents regardless of fault. *N.J.S.A.* 39:6A–4 states,

> [E]very standard automobile liability insurance policy … shall contain personal injury protection benefits for the payment of benefits without regard to … fault of any kind, to the named insured and members of his family residing in his household who sustain bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as a pedestrian … and to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with permission of the named insured.

Thus, two main coverage classes for PIP benefits exist under the statute: the named insured and family members residing in the household; and other persons who sustain bodily injury while occupying, entering into, alighting from or using the vehicle of the named insured with that person's permission.[7] With respect to the latter category, courts have striven to provide protection to third-party victims in fulfillment of the policy intentions animating the no-fault system. *See Proformance Ins. Co. v.*

---

[7] Additional rules of coverage that further limit the first category identified above apply to "special" policies issued pursuant to *N.J.S.A.* 39:6A–3.3. None are relevant to the instant appeal.

*Jones,* 185 *N.J.* 406, 420, 887 *A.*2d 146 (2005) ("[T]he protection of innocent third parties is a primary concern of [New Jersey's] personal injury no-fault system...."). Even when a policy is rescinded, for such reason as an insured's material misrepresentation in respect of the policy at its inception, PIP benefits may nevertheless remain payable to innocent third parties. *See Fisher v. N.J. Auto. Full Ins. Underwriting Ass'n,* 224 *N.J.Super.* 552, 558–59, 540 *A.*2d 1344 (App.Div.1988) (noting that members of public are intended beneficiaries of no-fault system and distinguishing insurer's liability to its insured from liability to third parties).

In *Fisher,* the claimant was a passenger in a vehicle involved in a car accident. *Id.* at 554, 540 *A.*2d 1344. The owner of the vehicle intentionally failed to register it. *Ibid.* The insurer declared the policy void *ab initio* as to the insured, but when the injured passenger pressed a third-party claim for PIP benefits under the void policy, the Appellate Division held that the insurer retained an obligation under the policy to innocent third-party members of the public, like the claimant. *Id.* at 558–59, 540 *A.*2d 1344. "To hold otherwise ... would undermine the legislative purpose of our No–Fault Law." *Id.* at 559, 540 *A.*2d 1344; *see also Dillard v. Hertz Claim Mgmt.,* 277 *N.J.Super.* 448, 450–52, 650 *A.*2d 1 (App.Div.1994) (awarding PIP benefits to sister of named insured under insured's void policy after passenger-sister sustained injuries in insured's vehicle), *aff'd,* 144 *N.J.* 326, 676 *A.*2d 1065 (1996).

On the other hand, when a named insured has engaged in conduct that has resulted in the voiding of an automobile insurance policy, courts have employed the rescission remedy to deny that insured the right to claim PIP benefits under the void policy. *See, e.g., Remsden v. Dependable Ins. Co.,* 71 *N.J.* 587, 589, 367 *A.*2d 421 (1976) (recognizing ability of insurer to void policy for material misrepresentation by named insured); *see also Tucker v. Allstate Ins. Co.,* 195 *N.J.Super.* 230, 233–34, 478 *A.*2d 1220 (App.Div.1984) (rescinding named insured's policy for issuance of

bad check and thus not permitting derivative claim for contribution by another insurer against void policy). In *Tucker, supra,* the plaintiff sustained injuries while operating a motor vehicle that was not covered under the plaintiff's existing automobile insurance policy. 195 *N.J.Super.* at 232–33, 478 *A.*2d 1220. After the plaintiff recovered PIP benefits as an additional insured covered under his mother's automobile insurance policy, the plaintiff's mother's insurer sought contribution from the insurance company that provided coverage for the plaintiff's personal vehicle. *Id.* at 233, 478 *A.*2d 1220. The Appellate Division held that the plaintiff's insurer "had a right to declare the [plaintiff's] policy a nullity" upon receiving notice that the plaintiff issued a bad check to cover the premium deposit. *Ibid.* Therefore, because the plaintiff's insurer had the right to rescind the policy as to the plaintiff, and because the right of the plaintiff's mother's insurer to seek contribution was derivative of the plaintiff's right to assert claims under that policy, no contribution for the PIP benefits paid was warranted. *Id.* at 234, 478 *A.*2d 1220.

More recently, this Court dealt with how to treat a spouse injured in an automobile accident when she was not the named insured on the policy and had not engaged in the fraudulent conduct that had resulted in rescission of the automobile policy. *See Palisades, supra,* 175 *N.J.* at 145–46, 814 *A.*2d 619. In *Palisades,* a wife was involved in an accident while driving a vehicle covered under her husband's automobile insurance policy, and she sought to recover PIP benefits under that policy. *Id.* at 147, 814 *A.*2d 619. It was assumed that she was unaware that her husband, Bastien, had intentionally omitted her name from the list of licensed drivers residing in their household when he completed the application for automobile insurance. *Id.* at 146, 814 *A.*2d 619. We granted certification to address whether a resident spouse, ignorant of the intentional misrepresentation of her husband, could be considered the equivalent of an innocent third party entitled to recover PIP benefits under her husband's void policy. *Id.* at 145, 814 *A.*2d 619.

Our opinion stressed that a claimant must be evaluated as if he or she held the status to which he or she would have been entitled had the named insured completed the application honestly. *Id.* at 150, 814 *A.*2d 619. We noted that parties seeking to recover should not be permitted to improve their likelihood of recovery solely on the strength of a misrepresentation. *Ibid.* By law, a wife enjoys first-party status under an automobile policy by virtue of being the resident spouse of a named insured. *Ibid.* (citing *N.J.S.A.* 39:6A–2(g)). Thus, as the equivalent of a named insured regardless of whether she was identified, Bastien's wife would have been entitled to first-party coverage under the policy had it been valid and, conversely, her coverage would have been precluded under the policy had it been voided for any valid reason. *Ibid.*

The equities did not support awarding Bastien's wife the status of an "innocent" party, which would have placed her in a superior position as a result of the misrepresentation than if the policy had been voided for non-payment. *Id.* at 151–52, 814 *A.*2d 619. Noting that spouses are "unique[ly] position[ed]" to know or to learn about the insurance interactions of their partner, we stated that "[r]esponsible adults should inform themselves in respect of important insurance-related matters pertinent to their household, and should be encouraged to do so." *Id.* at 151, 814 *A.*2d 619. Bastien's fraud was intentional, and his wife with whom he lived was an "incidental beneficiary of the reduced premiums," so we declined to allow the household to reap the additional windfall of a PIP award. *Id.* at 152, 814 *A.*2d 619. A contrary holding would have served to encourage insurance fraud. *Id.* at 149, 151–52, 814 *A.*2d 619 (citing *Longobardi v. Chubb Ins. Co. of N.J.,* 121 *N.J.* 530, 541, 582 *A.*2d 1257 (1990)).

The question now presented is whether a dependent child, newly licensed, only recently of driving age, and living with her parent, stands on different footing when the equities are considered in connection with her claim for PIP benefits under her father's void automobile insurance policy. We must determine whether there is room for some consideration of innocence in

respect of an additional insured seeking first-party compulsory PIP benefits under a policy that has been subject to the judicial remedy of rescission when the fraud is due to the action of the parent of a young driver.

## III.

The judicial remedy of rescission is rooted in considerations of equity. *See Stambovsky v. Cohen,* 124 *N.J. Eq.* 290, 295, 1 *A.*2d 456 (E. & A.1938). Where a party has gained an unfair advantage by virtue of a fraudulent misrepresentation, and monetary damages alone will not satisfy the injury sustained by the aggrieved party, courts have looked to the equitable remedy of rescission to eliminate the damage. *See, e.g., Jewish Ctr. of Sussex County v. Whale,* 86 *N.J.* 619, 626–27, 432 *A.*2d 521 (1981) (rescinding employment contract based on defendant's misrepresentation because "mere legal damages [could not] make the plaintiff whole"). "The object of equitable remedies such as . . . rescission is to restore the parties to the *status quo ante* and prevent the party who is responsible for the misrepresentation from gaining a benefit." *Bonnco Petrol, Inc. v. Epstein,* 115 *N.J.* 599, 612, 560 *A.*2d 655 (1989); *see also Enright v. Lubow,* 202 *N.J.Super.* 58, 72, 493 *A.*2d 1288 (App.Div.1985), *certif. denied,* 104 *N.J.* 376, 517 *A.*2d 386 (1986).

In the field of insurance, rescission has long been recognized as an available and necessary remedy to combat fraudulent behavior by an insured. *See N.Y. Life Ins. Co. v. Weiss,* 133 *N.J. Eq.* 375, 380, 32 *A.*2d 341 (E. & A.1943) (per curiam) (affirming rescission of life insurance policy where named insured made material misrepresentation in its obtainment); *see also Mass. Mut. Life Ins. Co. v. Manzo,* 122 *N.J.* 104, 110, 118, 584 *A.*2d 190 (1991) (holding that insured's failure to reveal diabetes affliction when applying for life insurance policy constituted material misrepresentation that permitted insurer to void policy *ab initio* notwithstanding that insured's subsequent death was unrelated to that medical condition). Indeed, we have recognized the need to

declare an insurance contract void from its inception because of a variety of behaviors by an insured, when the materiality of a misrepresentation strikes at the core of the agreement to insure. For example, in *Longobardi v. Chubb Insurance Co. of New Jersey*, 121 *N.J.* 530, 582 *A.*2d 1257 (1990), we examined the materiality component to a misrepresentation that was alleged to justify rescission of a homeowner's policy. *Id.* at 533, 582 *A.*2d 1257. The *Longobardi* insured had obtained a policy that covered his art collection and that also contained a "concealment or fraud" provision, permitting the insurer to deny coverage if the insured made a material misrepresentation to the insurer pertaining to the policy. *Id.* at 534, 582 *A.*2d 1257. Subsequently, the home was burglarized and the art collection was taken, and the insured then filed a claim in which he falsely represented that he had never previously applied to another insurance company to insure his art collection. *Id.* at 534–35, 582 *A.*2d 1257. After discovering the misrepresentation, and that the insured had prior involvement with individuals suspected of insurance fraud, the insurer sought to have the policy declared void based on the "concealment or fraud" provision. *Id.* at 535, 582 *A.*2d 1257.

In upholding the insurer's right to void the policy *ab initio*, this Court held that the insured's contractual commitment to avoid material misrepresentations extended to "misrepresentations [that] strike at the heart of the insurer's ability to acquire the information necessary to determine its obligations and to protect itself from false claims." *Id.* at 539, 582 *A.*2d 1257. The insured did not make "[a] mere oversight or honest mistake." *Id.* at 540, 582 *A.*2d 1257. Rather, he made a knowing misrepresentation of a material fact. *Id.* at 543, 582 *A.*2d 1257. Notwithstanding that the misrepresentation was not made at the inception of the insurance agreement, we held that the insurer was justified in rescinding the policy. *Id.* at 543–44, 582 *A.*2d 1257.

Rescission remains a form of equitable relief in whatever setting its need arises, and courts wielding that remedy retain the discretion and judgment required to ensure that equity is done.

In furtherance of that objective, a court may shape the rescission remedy in order to serve substantial justice. *See Mitchell v. Oksienik*, 380 *N.J.Super.* 119, 130–31, 880 *A*.2d 1194 (App.Div. 2005) ("'In doing equity, [a] court has the power to adapt equitable remedies to the particular circumstances of each particular case.'" (quoting *Arabia v. Zisman*, 143 *N.J.Super.* 168, 176, 362 *A*.2d 1221 (Ch.Div.1976), *aff'd*, 157 *N.J.Super.* 335, 384 *A*.2d 1110 (App.Div.), *certif. denied*, 78 *N.J.* 335, 395 *A*.2d 204 (1978))). The power to mold the rescission remedy to do justice under the circumstances is perforce available when rescission is employed in the insurance context. *See, e.g., First Am. Title Ins. Co. v. Lawson*, 177 *N.J.* 125, 129, 827 *A*.2d 230 (2003) (voiding legal malpractice insurance coverage *ab initio* as to law firm and defalcating partners because of equitable fraud, but retaining coverage under policy "in respect of any innocent partner").

Although this Court has not addressed the rescission remedy often in the context of automobile insurance, case law has never suggested that that remedy should stray from its equitable roots. *See Tucker, supra*, 195 *N.J.Super.* at 234, 478 *A*.2d 1220 (noting equitable considerations in deciding whether to rescind named insured's automobile insurance policy). Indeed, when we considered in *Palisades* the ramifications of material misrepresentations made in respect of a spouse omitted from an automobile insurance policy, we were mindful that we were considering the actions of a licensed, driving adult spouse, whom we could not absolve from some personal responsibility in respect of the household's insurance obligations. *Palisades, supra*, 175 *N.J.* at 150–51, 814 *A*.2d 619. Consistent with the nature of rescission as an equitable remedy, the holding in *Palisades*, at its most basic level, was grounded in considerations of fairness and substantial justice. *See ibid.* The opinion reflected certain fundamental expectations of the insurance responsibility shared by married adult drivers, consistent with our state's firm anti-fraud public policy, and conditioned first-party benefits under an automobile insurance policy on personal adherence to that policy. *See id.* at 151–52, 814 *A*.2d 619.

That anti-fraud policy is also a valid, animating concern when applying the equitable remedy of rescission to an insurance policy's coverage of resident family members of the named insured, including adult-children drivers.[8] As drivers themselves, family members are charged with knowledge of the law that requires automobiles to be insured and, further, have an obligation to see that basic insurance requirements are met. Moreover, we acknowledge that insurers have an interest in a straightforward approach to evaluating coverage responsibilities under policies properly rescinded for fraud, non-payment of premium, or other good cause. Requiring insurers to analyze the "innocence" of every potential first-party insured who may seek coverage under a void policy would be a daunting and expensive prospect, the cost of which undoubtedly would be passed through, to some degree, to policyholders, in the form of raised premiums. Such concerns motivated the decision in *Palisades*, in which we clearly stated that claims by first-party insureds seeking the benefits of even compulsory PIP coverage under an automobile insurance policy rescinded for fraud would be met with skepticism. *Id.* at 150–52, 814 *A.*2d 619. We remain committed to the principled tack adopted in that case.

That said, we have never turned a deaf ear to the equities when plainly innocent parties cry out for relief. In this matter, we are concerned about the equitable treatment of a young, newly licensed driver, who placed her trust in her father for ensuring that the vehicles he allowed her to drive were properly insured as to her. As the Appellate Division below recognized, Chrissy was unaware that she was unidentified to the family's insurer and thus

---

[8] New Jersey's strong public policy of deterring insurance fraud finds expression in both this state's statutory law, *see N.J.S.A.* 2C:21–4.6 (criminalizing insurance fraud); *N.J.S.A.* 17:33A–1 to –30 (Insurance Fraud Prevention Act), and decisional law, *see, e.g., State v. Fleischman,* 189 *N.J.* 539, 548, 917 *A.*2d 722 (2007) (recognizing "Legislature's strongly expressed desire to curb the rampant and expensive problem of insurance fraud"); *Palisades, supra,* 175 *N.J.* at 152 n. 1, 814 *A.*2d 619 (referencing "long line of judicial decisions that have refused to reward insurance fraud").

innocent of the deceit perpetrated by her father. Additionally, her subordinate status in her family's hierarchy likely would have inhibited her ability to cure her father's insurance-related misdeeds, even if she was aware of the misrepresentation.[9] Furthermore, although it is impossible to say for certain, Chrissy appears to be the youngest person who would be denied compulsory PIP coverage, in a published decision, because of a parent's action or inaction that caused the voiding of the insurance policy.[10]

In these compelling circumstances foisted on Chrissy, we conclude that the Appellate Division correctly found error in the trial court's determination that it lacked discretion to fashion a rescission remedy to provide minimal PIP benefits to this injured young driver, who was unaware that the automobile her father was allowing her to drive was insured as to every resident family member except her. Exercising its own discretion, the appellate panel saw to it that equity was done. The panel recognized the rescission remedy as appropriate, but molded it to allow payment of PIP benefits to Chrissy. As the Appellate Division observed, Chrissy was dependent on the discretion of her father and she was unassailably innocent in respect of her father's insurance-related deceit.

Viewing the appellate decision here as an exercise of the discretion that the trial court misperceived to be unavailable, we

---

[9] Indeed, young, newly minted drivers who falsely believe that they are covered under a parent's automobile insurance policy because of misrepresentations by the parent to the child about the subject are likely even more sympathetic. And, arguably, the same might be said for young drivers who know of the misrepresentation but are prevented, by coercion or some other means, from notifying the insurer of the misrepresentation. On the other hand, an older child still living at home might not merit the same equitable treatment.

[10] *See Lovett v. Alan Lazaroff & Co.*, 244 *N.J.Super.* 510, 513, 582 *A.2d* 1274 (App.Div.1990) (denying PIP benefits, under mother's policy voided for nonpayment of premium, to son for injuries sustained while passenger in another vehicle). The paucity of personal facts in the *Lovett* opinion makes his age difficult to discern. However, nothing suggests that he was as youthful as Chrissy was at the time of her accident.

find no abuse in the Appellate Division's molding of the rescission remedy. The Appellate Division did not err in affirming the rescission that Rutgers Casualty requested but nonetheless allowing minimal compulsory PIP benefits to be paid to Chrissy. We therefore affirm the judgment of the Appellate Division.

## IV.

As a final matter, we have been asked to determine the amount of PIP benefits to which Chrissy is entitled under the void policy. The parties concede that Chrissy's recovery cannot exceed the minimum compulsory PIP benefits coverage mandated by statute. *See Marotta v. N.J. Auto. Full Ins. Underwriting Ass'n,* 280 *N.J.Super.* 525, 532, 656 *A.*2d 20 (App.Div.1995) (holding that breadth of recovery under retroactively revoked policy is minimum "compulsory insurance" coverage required by law), *aff'd o.b.,* 144 *N.J.* 325, 676 *A.*2d 1064 (1996); *see also Dillard v. Hertz Claim Mgmt.,* 144 *N.J.* 326, 327, 676 *A.*2d 1065 (1996) (same). We simply must clarify that amount.

*N.J.S.A.* 39:6A–4.3 sets forth "[p]ersonal injury protection coverage options." The statute reads in relevant part,

> With respect to personal injury protection coverage provided on an automobile ... the automobile insurer shall provide the following coverage options:
>
> . . . .
>
> (e) Medical expense benefits in amounts of $150,000, $75,000, $50,000 or $15,000 per person per accident; except that, medical expense benefits shall be paid in an amount not to exceed $250,000 for all medically necessary treatment of permanent or significant brain injury, spinal cord injury or disfigurement or for medically necessary treatment of other permanent or significant injuries rendered at a trauma center or acute care hospital immediately following the accident and until the patient is stable, no longer requires critical care and can be safely discharged or transferred to another facility in the judgment of the attending physician.

*N.J.S.A.* 39:6A–4.3 " 'is clear and unambiguous on its face and admits of only one interpretation,' " requiring that we give effect to the statute's plain meaning. *Thomsen v. Mercer–Charles,* 187 *N.J.* 197, 206, 901 *A.*2d 303 (2006) (quoting *State v. Thomas,* 166 *N.J.* 560, 567, 767 *A.*2d 459 (2001), *superseded on other grounds by statute, N.J.S.A.* 2C:43–7.2(d)). The minimum

compulsory PIP benefits coverage mandated by statute is $15,000 per person per accident unless a claimant sustains one of the injuries set forth in *N.J.S.A.* 39:6A–4.3(e) and receives treatment at a trauma center or acute care hospital immediately following the accident. Where a claimant's injury falls within that exception, the minimum compulsory coverage required by statute is the cost of the claimant's medical expenses up to $250,000 for treatment rendered, but only until such time as the plaintiff is deemed to be in stable condition.[11] On the record presented to us, we cannot ascertain the precise dollar amount of PIP benefits to which Chrissy is entitled. We therefore remand this matter to the Law Division for that determination.

## V.

The judgment of the Appellate Division is affirmed, as modified. The matter is remanded to the Law Division for further consideration consistent with this opinion.

*For affirmance as modification/remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO and HOENS—6.

*Opposed*—None.

---

[11] That determination is consistent with the *New Jersey Auto Insurance Buyer's Guide,* which, for a "standard policy," describes the available personal-injury-protection coverage options as "as low as $15,000 per person or accident," but qualifies that amount by noting that "up to $250,000 [is afforded] for permanent or significant injury regardless of selected limit."